# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 95-10711
(Summary Calendar)

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES G. FLOYD, JR.,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas
(USDC No. 3:92-CR-0519-H)

April 10, 1996

Before JOLLY, JONES, and STEWART, Circuit Judges.

PER CURIAM:[*]

Charles G. Floyd, Jr., appeals his conviction and sentence for unlawful receipt of funds and

filing a false tax return. For the following reasons we affirm the decision of the district court.

The first issue on appeal is whether Floyd filed a timely notice of appeal. In a criminal case,

the notice of appeal shall be filed within ten days after the entry of judgment. Fed. R. App. P. 4(b).

The government concedes that Floyd filed a motion for new trial within ten days of the district court's

entry of judgment but contends that he was not entitled to do so because he pleaded guilty. The

government argues that his motion was a nullity and did not suspend the time for filing a notice of

_____

[*]Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

appeal.

The document Floyd filed was titled "Motion for New Trial (A Different Sentence) and Brief." After reviewing the motion, we deem it construed properly as a motion for reconsideration of his sentence. This court has determined that a timely motion for reconsideration will "extend the time in which to appeal so that it begins to run when the motion is denied." United States v. Brewer, 60 F.3d 1142, 1143 (5th Cir. 1995); Fed. R. App. P. 4(b). Because Floyd's notice of appeal was filed within ten days after the entry of the order denying his motion, his appeal was timely filed.

Double Jeopardy

The second issue on appeal is a double jeopardy question. Floyd argues that the district court erred in denying his motion to dismiss the criminal indictment based on double jeopardy because the government had obtained proceeds from Floyd by forfeiture in a prior proceeding based on the criminal indictment in this case.

However, Floyd has failed to show that the civil forfeiture action was based on the offense involved in the instant criminal proceeding. The government sought the civil forfeiture for alleged violations involving a check for $217,888 disbursed by United Bank to Floyd in September 1992. This disbursement was the result of internal transfers between the bank and its holding company, Lancaster Bancshares, 98% of which was owned by Floyd. The disbursement was not related to Floyd's loan transaction with Thomas Gaubert.

The alleged violations in the criminal indictment involved some of the same statutory provisions as those cited in the civil proceeding but arose out of Floyd's loan transaction with Gaubert, a separate scenario.

Floyd's argument that the government acted improperly in the manner in which it initially seized the funds has no relevance with respect to his double jeopardy claim. Thus, the district court did not err in denying Floyd's motion to dismiss the indictment based on double jeopardy.

Sentencing

Finally, Floyd argues that the district court misapplied the guidelines in calculating his offense

2

level.

"A district court's interpretations of the sentencing guidelines are conclusions of law, reviewed de novo. United States v. Landers, 68 F.3d 882, 884 (5th Cir. 1995). Section 2B4.1 of the Guidelines provides for a base offense level of 8 for cases involving commercial bribery and kickbacks. "If the greater value of the bribe or the improper benefit to be conferred exceeded $2,000, increase the offense level by the corresponding number of levels from the table in § 2F1.1." § 2B4.1(b)(1).

The comments following § 2B4.1 refer to the commentary explaining § 2C1.1, which addresses offenses involving public officials, including offenses involving a receipt of a bribe. According to the commentary, the value of "the benefit received or to be received" means the net value of such benefit. The comment then gives an example of a government employee who, in return for a $500 bribe, reduces the price for surplus property offered for sale by the government from $10,000 to $2,000. The value of the benefit received would be $8,000. In another example, the benefit is the $20,000 profit made on a $150,000 contract awarded in return for a bribe.

Based on these explanations and examples, the district court should have determined the actual benefit received by Gaubert as a result of the loan, rather than considering the benefits received by Floyd. Although there was a reference in the addendum to the presentence investigation report that a determination was made at Gaubert's sentencing that he initially received a benefit of $200,000 from the loan, there was no evidence to that effect presented at Floyd's sentencing.

In the background comments following § 2C1.1, it states that "[w]here the value of the bribe exceeds the value of the benefit or the value of the benefit cannot be determined, the value of the bribe is used because it is likely that the payer of such bribe expected something in return that would be worth more than the value of the bribe." Based on this commentary, in the absence of any reliable evidence concerning the amount of the benefit conferred on Gaubert, the value of the bribe would have been the proper amount to be considered.

Further, even if the value of the benefit received by Floyd should have been considered in

3

determining the offense level, the amount of the bribe would still have been the controlling factor because that amount exceeded any benefit which Floyd contends he received as a result of the kickback.  See § 2B1.4.

The amount of the bribe resolves the issue.  The district court did not err in determining that Floyd's offense level should be computed based on his receiving a bribe in the amount of $450,000.

AFFIRMED.