**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 94-11056
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

CLAUDE EDWARD LANDERS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

October 31, 1995

Before SMITH, BARKSDALE, and BENAVIDES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Claude Landers appeals his sentence for one count of conspiracy to pay and accept illegal bribes in violation of 18 U.S.C. § 371 (1993), amended by 18 U.S.C. § 371 (1995), and one count of paying bribes in violation of 41 U.S.C. §§ 53 and 54 (1995). Landers argues that the district court misapplied U.S.S.G. § 2B4.1 (1994) by deducting only the cost of goods sold ("CGS") from the gross value of the wrongfully-obtained supply contracts.[1] Landers

---

[1] The CGS, in a merchandising company, is the price the company pays for the products that it sells.

contends that overhead costs should also be deducted from gross value to determine the appropriate enhancement under U.S.S.G. § 2F1.1 (1994). Because the trial court correctly interpreted the sentencing guidelines, we affirm.

I.

Landers was a sales representative for Electro Enterprises, Inc. ("EEI"), a representative for distributors and manufacturers of aerospace and avionics equipment. EEI supplies parts to Bell Helicopters Textron, Inc. ("Bell"), and other businesses throughout the country. EEI does not manufacture the parts it sells.

From December 1989 until September 1992, Landers made cash bribes totaling approximately $10,000 to employees of Bell, as a result of which EEI netted over $1 million in contracts. The bribes also led to a five-count indictment against Landers and two other defendants.

Pursuant to a plea agreement, Landers pleaded guilty to one count of conspiracy to solicit and accept kickbacks in connection with defense contracts and one count of soliciting and accepting kickbacks in connection with defense contracts. At sentencing, the district court determined that EEI had made a gross profit of $204,071 from contracts obtained by Landers. The court arrived at the gross profit figure by deducting the CGS from the contract price. Landers objected, but to no avail; the court used the gross profit figure to enhance his sentence under §§ 2B4.1 and 2F1.1.

II.

The only issue on appeal is whether the district court correctly applied § 2B4.1. Landers argues that the court should have used a net profit figure for sentencing. In particular, he asserts that the court should arrive at a net profit figure by deducting the CGS and a share of EEI's overhead from the gross value of the contracts.

A district court's interpretations of the sentencing guidelines are conclusions of law, reviewed de novo. United States v. McCaskey, 9 F.3d 368, 372 (5th Cir. 1993). The guidelines set a base offense level of 8 for cases of commercial bribery. When "the greater of the value of the bribe or the improper benefit to be conferred exceed[s] $2,000," the level should be increased according to the table in § 2F1.1. U.S.S.G. § 2B4.1.

We must discern the meaning of the phrase "value of the improper benefit to be conferred." The phrase could mean gross value, net profits, or some intermediate result reached by deducting some but not all costs from gross value. The meaning of the phrase is not obvious, but the commentary provides insight: "The 'value of the improper benefit to be conferred' refers to the value of the action to be taken or effected in return for the bribe." U.S.S.G. § 2B4.1, application note 2. For further clarification, the commentary cross-references U.S.S.G. § 2C1.1 (1994), covering bribery involving public officials.

Application note 2 of the commentary to § 2C1.1 states:

The value of "the benefit received or to be received" means the net value of such benefit. Examples: (1) A

3

government employee, in return for a $500 bribe, reduces the price of a piece of surplus property offered for sale by the government from $10,000 to $2,000; the value of the benefit received is $8,000. (2) A $150,000 contract on which $20,000 profit was made was awarded in return for a bribe; the value of the benefit received is $20,000. Do not deduct the value of the bribe itself in computing the value of the benefit received or to be received. In the above examples, therefore, the value of the benefit received would be the same regardless of the value of the bribe.

The very use of the adjective "net" before "value" implies that some costs should be deducted.

This is supported by the two examples in note 2. In both examples, costs are deducted from gross value. Finally, the instructions in note 2 that the value of the bribe should not be deducted from gross value implies that something else should be deducted; if no deductions were allowed, then there would be no need to prohibit the deduction of bribes.

Although the guidelines do not explicitly state which costs should be deducted, the commentary demonstrates that, at the least, direct costs are deductible.[2] In this case, the CGS is certainly a direct cost.

Both examples in the commentary deduct direct costs from gross value in order to determine a net value. In particular, the second example equates a $20,000 profit on a $150,000 contract with the value of the benefit received. The language of the note leaves no

[2] We define direct costs as all variable costs that can be specifically identified as costs of performing a contract. This might include, for example, transportation costs for the goods in question. Thus, variable overhead costs that cannot easily be identified to a specific contract are not direct costs. This definition differs from the accounting term "direct costs" in that it excludes those variable costs that cannot readily be apportioned to the contract. We also note that under § 2F1.1 application note 8, sentencing courts are not required to make precise calculations.

4

doubt that direct costs should be deducted from the gross value of the contract. No other interpretation of profits makes sense.

Finally, deducting direct costs is consistent with the language of the guidelines that net value measures the "benefit received." Any benefit from a contract is reduced by the direct costs of performing the contract. This is so because direct costs have no independent value; the only benefit from direct costs is that they are necessary to secure the value of the contract over and above those costs.

The district court arrived at a gross profit of $204,071 by deducting the CGS from the contract price. Landers admits that EEI incurred no other direct costs. Because Landers failed to establish that EEI incurred any direct costs other than the CGS, the district court's gross profit finding accurately represents the gross value of the contracts minus all direct costs associated with performing the contracts.

### III.

The only remaining question is whether <u>indirect</u> costs should also be deducted from gross value,[3] or to put it another way, whether "net value" means "net profits." Landers points to the second example in application note 2 of § 2C1.1 for textual support that net profits is the correct measure of net value.

---

[3] Indirect costs (fixed costs) are the costs incurred independently of output. For example, rent and debt obligations are costs a business incurs no matter how many contracts it receives. For the most part, overhead costs are fixed costs. The marginal increase in variable overhead costs from a wrongfully obtained contract is normally so <u>de minimis</u> that accounting for them during sentencing would be impractical.

The guidelines do not support Landers's position. Although the second example in note 2 uses profit interchangeably with net value, it leaves the phrase undefined. The one-time use of the word "profit" is an unconvincing indication that "net value" means "net profits." If the Sentencing Commission wanted courts to use a "net profit" figure, presumably it would have employed that term. Instead, the Commission chose to use "net value" throughout the commentary.

The Commentary's treatment of bribes provides textual support for refusing to deduct indirect costs. The background to the commentary to § 2C1.1 states: "In determining the net value of the benefit received or to be received, the value of the bribe is not deducted from the gross value of such benefit; the harm is the same regardless of value of the bribe paid to receive the benefit." (Emphasis added.) In this passage, the Commission rejects using net profits to measure the value of the benefit received. It does so implicitly by noting that one type of direct costs, bribes, is not deductible from gross profits.

The Commission's stated reason for not deducting bribes informs us in analyzing whether indirect costs should be deducted. The reason bribes are not deducted from gross profits is that the remaining measure does not adequately reflect the harm from the bribe. As a sister circuit explained, "This concept of 'net value received' has nothing to do with the expense incurred by the wrongdoer in obtaining the net value received. This is clear from the Note's instruction that the value of the bribe is not to be

6

deducted in calculating the 'net value.'" <u>United States v. Schweitzer</u>, 5 F.3d 44, 47 (3d Cir. 1993) (refusing to deduct the amount a defendant paid a government employee for confidential information).

The harm caused by a bribe is the value lost to a competing party had the bribe not been paid. <u>See, e.g.</u>, <u>United States v. Ford</u>, 986 F.2d 1423 (6th Cir. 1993) (table) (rejecting the contention that the benefit should be measured by the difference between what the government paid under the contracts and what it would have paid had it not been for the bribes). That harm is independent of the value of the bribe.

The rationale for refusing to deduct the amount of a bribe from gross value applies equally to indirect costs. Like a bribe, indirect costs have no impact on the harm caused by the illegal conduct. This is true whether one considers the pecuniary benefit to the bribing party or the pecuniary loss to a competitor. For both parties, the benefit of an additional contract is measured by gross revenue minus direct costs. By definition, indirect costs do not affect that value.

Excluding indirect costs is also consistent with the guidelines' general goals of achieving "reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for criminal offenses committed by similar offenders" and "proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of differing severity." U.S.S.G. ch.1, pt. A.3. Allowing a wrongdoer to deduct

7

indirect costs would result in differing culpability not only for similar acts, but also for the very same act.

Take for example a case in which two defendants bribe the same government official for the same contract. If indirect costs were deductible, the defendants could receive different sentences if one of them worked for a company with higher indirect costs. Although the harm is the same, deducting indirect costs would result in disparate "net value" calculations and different enhancements under the guidelines. Respective defendants would receive different enhancements for the same crime and harm.

## IV.

For the foregoing reasons, we conclude that the "value of the improper benefit to be conferred" is measured by deducting direct costs from the gross value received. Because we are convinced that the district court in this case correctly excluded deductions of overhead and allowed only a deduction for direct costs, the judgment of sentence is AFFIRMED.