[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 14, 2006
THOMAS K. KAHN
CLERK

No. 05-11355
Non-Argument Calendar

_____

D. C. Docket No. 04-00145-CR-JEC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SAMUEL MOORE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(July 14, 2006)**

Before ANDERSON, BIRCH and WILSON, Circuit Judges.

PER CURIAM:

Samuel Moore appeals his conviction and 120-month sentence for bank

robbery involving the use of a dangerous weapon, in violation of 18 U.S.C. § 2113(a), (d). He raises four issues. First, Moore argues that the evidence was insufficient to support his conviction for bank robbery. He contends that the eyewitnesses did not identify him from a photo lineup and that he did not match their physical descriptions of the robber. Moore argues that the government's case relied heavily on the testimony provided by his ex-girlfriend Crystal Mitchell and former roommate Randall P. Dove, which was inconsistent with the robbery eyewitnesses.

Second, Moore argues that the district court erred under Rules 401, 402, and 403 of the Federal Rules of Evidence by admitting the fingerprint evidence from the air pistol package because there was no evidence that connected the air pistol from that package with the gun the bank teller saw during the robbery. Moore argues that the fingerprint evidence was not relevant under Rule 401 because the government did not connect the air pistol to the bank robbery by eliciting whether the type of pistol in the package was similar to the pistol that Haynes saw. Moore also argues that the court should have excluded the fingerprint evidence under Rule 403 because the air pistol package had minimal probative value given the lack of evidence connecting it to the robbery. He further claims that the air pistol packaging had a high danger of unfair prejudice because the jury could infer that

2

Moore used the pistol in the robbery because his fingerprint was found on the outside of the package.

Third, Moore argues that the district court erred under *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), by enhancing his sentence for obstruction of justice based on facts about the high-speed car chase that occurred after the bank robbery that were not reflected in the jury verdict or admitted by him.

Finally, Moore argues that the district court failed to properly calculate his criminal history category and guideline range correctly. Moore contends that it is impossible to deduce from the sentencing transcript how the district court calculated a criminal history category of IV. Moore contends that the district court appears to have sustained his objection to the inclusion of a 1995 driving under the influence ("DUI") conviction, which would have removed one criminal history point and reduced his criminal history category to III.

## I.

We generally review de novo whether evidence is sufficient for a guilty verdict, "viewing the evidence in the light most favorable to the government and drawing all reasonable inferences in favor of the jury's verdict." *United States v. Castro*, 89 F.3d 1443, 1450 (11th Cir. 1996). "The evidence is sufficient so long

3

as a reasonable trier of fact, choosing among reasonable interpretations of the evidence, could find guilt beyond a reasonable doubt." *United States v. Pineiro*, 389 F.3d 1359, 1367 (11th Cir. 2004). Determinations of witness credibility fall within the jury's exclusive province and may not be revisited unless the testimony is "incredible as a matter of law." *United States v. Calderon*, 127 F.3d 1314, 1325 (11th Cir. 1997). In order to be incredible as a matter of law, "[i]t must be testimony as to facts that the witness physically could not have possibly observed or events that could not have occurred under the laws of nature." *Id.* (quotations omitted).

Here, Moore argues that the evidence was insufficient to prove he was the person who robbed the bank. Viewing all the evidence in the light most favorable to the government and drawing all reasonable inferences in favor of the jury's verdict, the evidence here was sufficient to support the jury's verdict. Vicky Haynes, the bank teller, testified that a man wearing a dark short sleeve polo shirt, blue jeans, and a dark baseball cap approached her teller window, pushed a white bag with red letters in front of her, and said "fill it with money" and "I've got a gun." Haynes testified that the man raised his shirt and she saw a gun in the waistband of his pants. Haynes testified at trial that she was 99 percent sure that Moore was the robber. Both Haynes and Keisha Taylor, a bank customer, testified

4

that the robber had some sort of mark or scar on his face, which is consistent with Mitchell's testimony that Moore had a mole removed from his left cheek. Thus, the testimony from eyewitnesses supported a reasonable inference that the robber was Moore.

The testimony from Mitchell and Dove also supported a finding that Moore was the robber. Mitchell testified that Moore was gone when she woke on June 7, 2002, and left a note saying that he had gone to wash her 1990 Gray Chevrolet Cavalier. Mitchell testified that Moore did not return for several days. Mitchell identified Moore from the bank surveillance photographs based on the way he was standing with his right foot over his left foot, the clothing he was wearing in the picture, and his hair cut. Mitchell also testified that Moore acted nervous when she next saw him and told her that he had done something wrong.

Dove testified that Moore was gone from the trailer when he returned from work on June 7, and returned four or five days later without the gray Cavalier. Dove also stated that Moore acted nervous when he returned. Dove testified that Moore confessed to him about robbing a bank using a grocery bag. According to Dove, Moore told him of the police chase and of parking the car behind a house and running. Dove testified that Moore showed him the bank he robbed, the gun he used, and the bag with the money. Although Dove had prior criminal

5

convictions and a sexual relationship with Mitchell, the jury was entitled to credit their testimony. The statements by Mitchell and Dove are not "incredible as a matter of law," and thus support the jury's verdict. *See Calderon*, 127 F.3d at 1325.

Other evidence also supported the jury's verdict. Both Terri Jordan, an assistant branch manager at the bank, and Taylor testified that they saw the robber leave in a gray car that matched the physical description of Mitchell's car, which, according to Mitchell, Moore took the morning of the robbery. Zachary Luna, a deputy at the Cherokee County sheriff's office, testified that he engaged in a high speed chase with the suspected bank robber who was driving a gray Chevrolet Cavalier that also matched the description of Mitchell's car. Detective Joseph McDonald from the Cherokee County sheriff's office testified that he responded to a citizen's report of a gray 1990 Chevrolet Cavalier parked in his back yard and a search of the vehicle revealed plastic packaging for an air pistol. Fingerprints from the air pistol packaging matched Moore's. All of the evidence, taken together, is more than sufficient to sustain Moore's guilty verdict.

## II.

Moore argues that the fingerprint evidence should be excluded as irrelevant or lacking enough probative value to overcome its unfair prejudice under Rules

401, 402, and 403 of the Federal Rules of Evidence. We generally review a district court's evidentiary rulings for abuse of discretion. *United States v. Walker*, 59 F.3d 1196, 1198 (11th Cir. 1995). However, where a defendant raises a claim of evidentiary error for the first time on appeal, as is the case here, we review for plain error, "correct[ing] only for errors that are particularly egregious and that seriously affect the fairness, integrity or public reputation of judicial proceedings, and then only when a miscarriage of justice would result." *United Sates v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003).

Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence which is not relevant is not admissible. Fed. R. Evid. 402. Here, the fingerprint on the air pistol packaging found in Mitchell's car is relevant to show that Moore was likely the person seen driving the getaway car.

A district court may exclude relevant evidence when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. In reviewing a Rule 403 issue, we view "the evidence in a light most favorable to its admission,

7

maximizing its probative value and minimizing its undue prejudicial impact." *United States v. Jernigan*, 341 F.3d 1273, 1284 (11th Cir. 2003) (quotations omitted).

The district court did not err under Rules 401, 402, or 403 by admitting the fingerprint evidence found on the air pistol packaging. The evidence is relevant for identification purposes. Moore also fails to show that this evidence is unduly prejudicial.

Moore argues that the fingerprint evidence was highly prejudicial because it could have led the jury to connect him to the robbery improperly , even though the government did not produce evidence that the weapon used in the robbery resembled the air pistol in the packaging. Moore ignores the fact that his fingerprint on an item left in the getaway car is probative evidence that he was in fact the person driving the getaway car. Therefore, we find no error, much less plain error, under Rules 401, 402, and 403.

### III.

Because Moore timely raised a *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) objection in the district court, we review his claim de novo. *See United States v. Paz*, 405 F.3d 946, 948 (11th Cir. 2005) (per curiam).

8

Before *Booker*, a district court generally was required to sentence a defendant within a calculated guidelines range. The Supreme Court in *Booker*, which was issued before Moore's sentencing, excised the provision of the federal sentencing statute that made the guidelines mandatory, rendering the guidelines wholly advisory. *See Booker*, 543 U.S. at 244-47, 125 S. Ct. at 756-57. A *Booker* error occurs when a district court judge sentences a defendant "under a mandatory Guidelines scheme, even in the absence of a Sixth Amendment violation." *United States v. Shelton*, 400 F.3d 1330, 1330-31.

Here, the district court properly applied the obstruction of justice enhancement because Moore was sentenced after *Booker* and treated the guidelines as advisory. *United States v. Chau*, 426 F.3d 1318, 1323-24 (11th Cir. 2005) (per curiam). The court explicitly acknowledged at least twice during the sentencing hearing that the guidelines were advisory. The district court did not apply the guidelines in a mandatory fashion; we thus find no *Booker* error. *Id.*

IV.

Even post-*Booker*, district courts are required to consult and take into consideration the guidelines, which includes calculating the guidelines accurately. *United States v. Crawford*, 407 F.3d 1174, 1178-79 (11th Cir. 2005). Misinterpreting the guidelines effectively equates to failing to consult them. *Id.* at

9

1179. We review a district court's guideline calculations de novo. *United States v. DeVegter*, 439 F.3d 1299, 1303 (11th Cir. 2006).

Here, the district court purported to "not consider" Moore's 1995 DUI conviction in calculating his criminal history score. The court stated: "The defendant has two DUI's. I will assume that there was a problem with the second one . . . *and would not consider that*." If the 1995 DUI was not included, then the criminal history category would have been Category III, which would have resulted in a guidelines sentencing range of 87 to 108 months. The calculated guidelines range as stated by the district court was 100 to 125 months, which is consistent with a Category IV criminal history.

The parties interpret the district court's actions differently. Moore argues that the district court sustained his objection but did not adjust the guideline range, then sentenced him under an improperly calculated guideline range. The government, on the other hand, argues that the district court sustained Moore's objection, recalculated the guideline range, and then exercised its discretion to vary upward from the guideline range.

The record better supports Moore's interpretation of the district court's actions. The district court stated that it "would not consider" the DUI conviction, which would have yielded a Category III criminal history, yet the court stated that

the guideline range was 100 to 125 months, which would be the proper guideline range for a Category IV criminal history. This leads to our conclusion that the district court failed to calculate the guidelines properly . Given the district court's statements that it intended to sentence within the guidelines range, it is uncertain whether the court, absent the calculation error, would have likely sentenced Moore in the same fashion. In light of this uncertainty and the uncertainty as to whether the district court sustained Moore's objection, we vacate Moore's sentence and remand to the district court with instructions to clarify its ruling on Moore's objection, how it calculated the guideline range in light of that ruling, and whether it intended for Moore's sentence to fall within the applicable range or, as the government contends, to constitute a variance from the advisory guidelines.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**