[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 12, 2008
THOMAS K. KAHN
CLERK

_____

No. 06-15649
Non-Argument Calendar

_____

D. C. Docket No. 04-20897-CR-WMH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT GUNN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(February 12, 2008)**

Before CARNES, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Robert Gunn appeals his conviction and 200-month sentence for being a

felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(d)(1), (e).  After review, we affirm Gunn's conviction and sentence.

## I.  BACKGROUND

The Miami Gardens Police were investigating a shooting incident when an anonymous call was placed to the police station's publicly listed telephone number.  The anonymous caller stated that the man the police were looking for was named Gunn and gave a physical description and Gunn's location.  The officer who took the anonymous call relayed the information to officers on the scene.

Two officers spotted Gunn, whom they knew from previous interactions.  Gunn fled and, while being pursued on foot by the officers, threw a firearm to the ground.  As the officers searched for Gunn, an individual approached them and indicated that the man they were looking for was inside his house.  With the homeowner's consent, officers search the house and found Gunn lying on the floor in his underwear.  On the floor next to Gunn was a sock filled with .38 caliber bullets, the same caliber as the discarded firearm, and a leather holster that fit the discarded gun.  During the search, officers also found a "sweaty" t-shirt matching the t-shirt worn by Gunn during the foot pursuit.

After Gunn was arrested, an officer asked Gunn why he had possessed a firearm.  Gunn responded that he had the firearm for his protection.  Later, Gunn

2

confided in another jail inmate that he had engaged in "some gunplay" and then

fled from police, running into a house and taking off his clothes before he was

arrested. Gunn also asked the fellow inmate for advice on how to "beat" the gun

charge.

Gunn was charged with being a felon in possession of a firearm. A jury

found Gunn guilty. The district court sentenced Gunn to 200 months'

imprisonment, followed by five years of supervised release. Gunn appealed.

## II. DISCUSSION

### A.    Jury Instruction

Gunn argues that the district court erred in refusing to give Gunn's proposed

jury instruction, this Court's Special Instruction 1.1,[1] because a fellow inmate who

testified against him hoped to receive favorable treatment from the government.

We review "a district court's refusal to give a requested jury instruction for

---

[1]Gunn's requested instruction read:
The testimony of some witnesses must be considered with more caution than the testimony of other witnesses.

For example, a paid informer, or a witness who has been promised that he or she will not be charged or prosecuted, or a witness who hopes to gain more favorable treatment in his or her own case, may have a reason to make a false statement because the witness wants to strike a good bargain with the Government.

So, while a witness of that kind may be entirely truthful when testifying, you should consider that testimony with more caution than the testimony of other witnesses.
Eleventh Circuit Pattern Jury Instructions (Criminal), Special Instruction 1.1 (2003).

abuse of discretion." United States v. Klopf, 423 F.3d 1228, 1241 (11th Cir. 2005). The refusal to give a requested jury instruction only warrants a new trial when: "(1) the requested instruction was substantively correct, (2) the court's charge to the jury did not cover the gist of the instruction, and (3) the failure to give the instruction substantially impaired the defendant's ability to present an effective defense." Id. (quotation marks omitted). To determine whether the gist of the requested instruction was covered by the charge actually given, we "need only ascertain whether the charge, when viewed as a whole, fairly and correctly states the issues and the law." Id. (quotation marks omitted).

Here, the district court did not abuse its discretion in refusing to give Gunn's requested jury instruction. The government had told Gunn's fellow inmate, who testified as a witness in Gunn's trial, unequivocally that he would receive no benefit for his testimony. Furthermore, the gist of the instruction – that the testimony of some witnesses need to be viewed with more caution than others – was already covered in the court's charge. Specifically, the district court instructed the jury that, in determining the believability of any witness, it should consider, among other things, whether the witness had "a personal interest in the outcome of the case." The district court also instructed the jury that it could consider prior convictions as a factor in determining whether a witness was believable, and the

4

only witness who had been convicted of a felony was the fellow inmate of Gunn.

**B.     Admission of Anonymous Call**

During Gunn's trial, the district court admitted evidence of the anonymous call received at the police station. Citing Davis v. Washington, 547 U.S. 813, 126 S. Ct. 2266 (2006), Gunn argues the admission of the anonymous caller's statements to the police violated his Sixth Amendment confrontation right.[2]

The Confrontation Clause forbids the introduction of testimonial hearsay evidence at trial, unless: (1) the declarant is unavailable, and (2) the defendant had a prior opportunity to cross-examine the declarant. Crawford v. Washington, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374 (2004) (concluding that statements made during police interrogations are testimonial hearsay). However, in Davis, the Supreme Court explained that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." 547 U.S. at ___, 126 S. Ct. at 2273 (concluding that statements made in response to 911 operator's questions were not testimonial hearsay). The parties dispute whether the anonymous tip in this case is more closely analogous to the

---

[2]We review the admissibility of evidence for abuse of discretion. See United States v. Miles, 290 F.3d 1341, 1351 (11th Cir. 2002). However, we review a preserved constitutional claim de novo. See United States v. Cantellano, 430 F.3d 1142, 1144 (11th Cir. 2005).

5

nontestimonial statements made during the 911 calls in <u>Davis</u> or the testimonial statements made during the police interrogation in <u>Crawford</u>.

We need not resolve this question because even assuming <u>arguendo</u> that the anonymous tip was a testimonial statement, its admission was harmless beyond a reasonable doubt.  See <u>United States v. Edwards</u>, 211 F.3d 1355, 1359 (11th Cir. 2000) (stating that the harmless error doctrine applies to violations of the Confrontation Clause).[3]

In addition to the testimony about the anonymous call identifying Gunn as the man for whom the police were looking, the jury heard testimony from two officers, both of whom knew Gunn from previous interactions and recognized Gunn as he attempted to flee the scene.  Both officers observed Gunn throw the gun to the ground as he ran.  Later, Gunn was found in the house with a holster and ammunition matching the weapon thrown nearby and a "sweaty" t-shirt matching that of the man who ran away.

After his arrest, Gunn admitted to one officer that he had possessed the gun

---

[3]Under the harmless error doctrine, we ask "whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt."  <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 684, 106 S. Ct. 1431, 1438 (1986).  Whether the error is harmless depends upon numerous factors, including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and . . . the overall strength of the prosecution's case."  <u>Id.</u>

for protection. Gunn also confessed to a fellow inmate at the jail that he ran from police, threw his gun away during the chase, ran into a house and stripped in the bedroom to look like he had been there for a while, but that police found his clothes, a holster and bullets. Furthermore, Gunn stipulated that the gun and ammunition had traveled in interstate commerce and that he was a convicted felon. Although no fingerprints suitable for comparison were found on the gun or ammunition, a latent fingerprint expert explained to the jury the difficulty in collecting fingerprints from ammunition and guns kept in holsters.

Considering all the other evidence pointing to Gunn's guilt, the testimony about the anonymous call was cumulative evidence that did not add any new or significant information. In addition, while much of the evidence presented at trial corroborated the anonymous call, no evidence contradicted it. Even absent the evidence of the anonymous call, there was ample evidence to convict Gunn of being a felon in possession of a firearm. Thus, the admission of the anonymous call, if anything, was harmless error.

## C.    Armed Career Criminal Enhancement

Gunn contends that the government presented insufficient proof of his underlying convictions to support an armed career criminal sentencing

enhancement.[4]

Under 18 U.S.C. § 924(e), the Armed Career Criminal Act ("ACCA"), a person who violates § 922(g) and who has three previous convictions for a "violent felony," a serious drug offense, or both, is an armed career criminal and subject to a mandatory-minimum fifteen-year term of imprisonment. In addition, U.S.S.G. § 4B1.4 provides that armed career criminals be assigned an offense level of at least 33.

The government points to these predicate convictions to support the armed career criminal enhancement: (1) a 1999 Florida conviction for strong-arm robbery (a violent felony); (2) a 2001 Florida conviction for possession of cocaine with intent to sell (serious drug offense); and (3) a 2002 Florida conviction for possession of cocaine with intent to sell (serious drug offense). At sentencing, as proof of these convictions, the government produced a National Crime Information Center ("NCIC") criminal history report that was generated based on Gunn's fingerprints and was tied to his social security number.

On appeal, Gunn does not elaborate upon his claim that the government's proof is insufficient or contend that the NCIC criminal history report is unreliable

---

[4]"We review the district court's findings of fact in sentencing for clear error." United States v. DeVegter, 439 F.3d 1299, 1303 (11th Cir. 2006). "We review questions of law arising under the Sentencing Guidelines de novo." Id. (quotation marks omitted).

or inaccurate.[5] It is well-established that a district court may consider at sentencing otherwise inadmissible evidence so long as there are sufficient indicia of reliability. See United States v. Wilson, 183 F.3d 1291, 1301 (11th Cir. 1999) (concluding that sources relied upon by district court–presentence investigation report, testimony of one probation officer and notes of another probation officer–were sufficiently reliable to support district court's finding as to existence of prior conviction). The NCIC report was generated based on Gunn's fingerprints and social security number, which provided sufficient indicia of reliability. Given that Gunn does not challenge the accuracy of the NCIC report, we cannot say that the government did not prove Gunn's three convictions by a preponderance of the evidence.

Gunn also argues that his predicate offenses should have been alleged in his indictment and proven to the jury beyond a reasonable doubt. This argument is foreclosed by Almendarez-Torres v. United States, 523 U.S. 224, 118 S. Ct. 1219 (1998). United States v. Greer, 440 F.3d 1267, 1273 (11th Cir. 2006).

**AFFIRMED.**

---

[5]Significantly, Gunn does not and has never argued that the predicate convictions do not qualify as either violent felonies or serious drug offenses within the meaning of the ACCA. Nor does Gunn argue that these convictions are ambiguous and that the district court referred to impermissible records under Shepard v. United States, 544 U.S. 13, 125 S. Ct. 1254 (2005), to determine whether the convictions qualified as either a violent felony or a serious drug offense under the ACCA. Rather, Gunn argues only that the government offered insufficient proof of the fact of these convictions.