[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-13844
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 27, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-20794-CR-MGC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

STEPHANE FRIDGY APPOLON,
BERNARD PIERRE,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(July 27, 2010)

Before BARKETT, HULL and WILSON, Circuit Judges.

PER CURIAM:

Co-appellants Stephane Fridgy Appolon and Bernard Pierre, proceeding through counsel, each appeal their convictions for being a felon in possession of a firearm or ammunition, in violation of 18 U.S.C. § 922(g)(1). On appeal, they challenge the sufficiency of the evidence against them. In addition, Pierre appeals his 63-month sentence, arguing that the district court improperly applied a two-level stolen-firearm enhancement under U.S.S.G. § 2K2.1(b)(4)(A). After review of the record and the parties' briefs, we affirm.

In 2008, a grand jury charged Appolon and Pierre with being felons in possession of (1) a Glock .40 caliber semi-automatic handgun, (2) a Romarm 7.62 x 39 mm caliber rifle, and (3) 28 rounds of 7.62 x 39mm caliber ammunition. Following a five-day trial, the jury was unable to reach a verdict, and the district court declared a mistrial. During a second trial in April 2009, Cassandra Mentor testified that she was attacked by a man at a laundromat one evening in August 2008. After Mentor's friend Gino pulled the attacker off of Mentor, she went home and returned to the laundromat with four of her relatives. As Mentor started walking to Gino's house, which is two houses down from the laundromat, where she last saw the attacker, Mentor testified that she saw a short, black man exit the gate to Gino's yard holding a "big gun," like an "AK." Mentor described the gun, what the man was wearing, and that he screamed that the block belonged to him.

2

At that point, Mentor testified that her attacker "came out" with two handguns, one on his hip, and the other in his hand. Mentor then called 911 and went back to the laundromat to meet the police. According to Mentor, the police lined-up three men in the street, and she identified both Appolon and Pierre as those carrying the guns. Mentor also positively identified them in court.

The prosecution played a surveillance video from the laundromat's security camera. Mentor identified Appolon and Pierre, and Mentor reiterated that Appolon held the assault rifle and Pierre held the handguns. The video showed the men heading toward Gino's house. On cross-examination, however, Mentor testified that the surveillance video did not show the assault, the picture was blurry, and she only saw the guns for a few seconds. Mentor also testified that she did not see any guns when she was attacked. Mentor testified that she met with Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") agents and confirmed that Appolon had the assault rifle in a picture shown to her, and Pierre had the handguns. She additionally identified the assault rifle and Glock in a picture and identified the actual guns in court.

Robert Glenn, Mentor's friend and eyewitness, testified that he saw a short man carrying a "chopper" or AK-47. Glenn also testified that he saw a Creole-speaking man hit the hood of his car, and he saw a "Glock" in his waistband. After

the police apprehended three men, Glenn identified Appolon and Pierre as the ones wielding guns. Glenn also spoke with ATF agents and re-identified a photograph of Pierre as the man with the Glock and Appolon as the man with the rifle, identified Appolon and Pierre in court, and confirmed that the video showed someone who matched his description of Pierre. On cross-examination, Glenn admitted never having seen Pierre before the two or three minutes the night of the incident, and he contradicted his testimony that Pierre was the suspect with the assault rifle, but then identified Appolon as the person he said was Pierre.

Several law enforcement officers also testified for the government regarding their collection of evidence and apprehension of Appolon and Pierre. They testified that no fingerprints were recovered from the guns, and the DNA results were inconclusive. The parties stipulated that both Appolon and Pierre each had at least one prior felony conviction. At the close of the government's case, Appolon and Pierre each moved for a judgment of acquittal based on lack of evidence. The defense did not call any witnesses. After the defense rested, Appolon and Pierre renewed their motions for directed verdicts.

At sentencing, the PSI recommended that Pierre receive a two-level enhancement under U.S.S.G. § 2K2.1(b)(4)(A), because the Glock handgun recovered was stolen. Pierre objected to the PSI, arguing that there was no

evidence at trial that the firearm was stolen, and the jury made no such finding. The probation officer responded that the government provided documentation that a law enforcement agent reported the Glock stolen and that a stolen-gun query on the National Criminal Information Center database confirmed that it was taken in a residential burglary. During a sentencing hearing, an officer with the Florida Division of Alchohol, Beverage, and Tobacco addressed the court and stated that his firearm, holsters, ammunition, and extra magazines were stolen during a burglary at his home in 2007. He filed a police report and did not believe anyone was apprehended for the crime. The district court did not make an explicit ruling on Pierre's objections, but it implicitly rejected them by finding that Pierre's total offense level was 22, which included a two-level increase for the stolen firearm and sentenced him to 63 months' imprisonment, followed by 3 years' supervised release. The district court then asked whether Pierre had any objection "to the Court's finding of fact or the manner in which the sentence was pronounced," and counsel for Pierre replied, "[n]o."

## I.

We review the sufficiency of the evidence *de novo*. *United States v. Garcia-Bercovich*, 582 F.3d 1234, 1237 (11th Cir. 2009), *cert. denied*, 130 S. Ct. 1562 (2010) (citation omitted). We consider the evidence "in the light most

favorable to the jury verdict, and draw all reasonable inferences and credibility determinations in favor of the Government." *United States v. Ellisor*, 522 F.3d 1255, 1271 (11th Cir. 2008) (citation omitted). "[I]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *United States v. Merrill*, 513 F.3d 1293, 1299 (11th Cir. 2008) (citation and quotation omitted).

Under § 922(g)(1), it is a crime for a felon to "possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1). Accordingly, to establish a violation of this provision, "the government must prove three elements: (1) that the defendant was a convicted felon, (2) that the defendant was in knowing possession of a firearm [or ammunition], and (3) that the firearm [or ammunition] was in or affecting interstate commerce." *United States v. Beckles*, 565 F.3d 832, 841 (11th Cir.) (citation and quotation omitted), *cert. denied*, 130 S. Ct. 272 (2009). Appolon and Pierre contest only the second element—that each did not knowingly possess a firearm or ammunition.

"The government need not prove actual possession in order to establish knowing possession; it need only show constructive possession through direct or

6

circumstantial evidence." *United States v. Greer*, 440 F.3d 1267, 1271 (11th Cir. 2006) (citation omitted). "Constructive possession exists when the defendant exercises ownership, dominion, or control over the item or has the power and intent to exercise dominion or control." *Id.* (citation omitted). Nevertheless, "a defendant's mere presence in the area of [an object] or awareness of its location is not sufficient to establish possession." *United States v. Pedro*, 999 F.2d 497, 500–01 (11th Cir. 1993) (alteration in original) (citation and quotation omitted). Further, "where all the eyewitnesses to the commission of the offense express substantial doubt about their identification of the defendant, the government must present some connecting or corroborating evidence in order to sustain a conviction." *United States v. Fredericks*, 857 F.2d 733, 736 (11th Cir. 1988) (citation and quotation omitted).

Here, the evidence was sufficient to sustain Appolon's and Pierre's convictions. Two eyewitnesses testified at trial that (1) they saw Appolon carrying the assault rifle that formed the basis for his conviction, and (2) they saw Pierre carrying the handgun that formed the basis for his conviction. Each witness identified Appolon and Pierre (1) in person on the night of the offense, (2) in photographs at a later date, and (3) in court. Further, they each identified pictures of the weapons of conviction prior to trial, and one of them identified both of the

actual weapons during the trial. Accordingly, we affirm Appolon's and Pierre's convictions.

## II.

We normally review questions of law raised at sentencing, including Guidelines calculations, *de novo*. *United States v. DeVegter*, 439 F.3d 1299, 1303 (11th Cir. 2006) (citation omitted). We review the district court's findings of fact for clear error. *Id.* Nevertheless, we review sentencing challenges raised for the first time on appeal in criminal cases for plain error. *See United States v. Bennett*, 472 F.3d 825, 831 (11th Cir. 2006) (per curiam) (citation omitted). Under the plain error standard, "there must be (1) an error, (2) that is plain, and (3) that affects substantial rights." *United States v. Williams*, 469 F.3d 963, 966 (11th Cir. 2006) (per curiam). If those conditions are met, we will "notice the error only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (citation and quotation omitted). A district court must begin the sentencing process by correctly calculating the applicable Guidelines range. *Gall v. United States*, 552 U.S. 38, 49, 128 S. Ct. 586, 596 (2007). The government bears the burden of proving the applicability of any enhancements. *United States v. Ndiaye*, 434 F.3d 1270, 1300 (11th Cir. 2006).

At sentencing, the court may make factual findings that go beyond the jury's

verdict or a defendant's admissions based upon the preponderance of the evidence, as long as the Guidelines are applied in an advisory manner. *United States v. Chau*, 426 F.3d 1318, 1323 (11th Cir. 2005) (per curiam); *see also United States v. Dean*, 487 F.3d 840, 854 (11th Cir. 2007) (per curiam) ("[A] district court may enhance a sentence based upon judicial fact-finding provided that its findings do not increase the sentence beyond the statutory maximum authorized by facts determined in a . . . jury verdict." (citation omitted)). "Evidentiary requirements are more relaxed during a sentencing procedure, and reliable hearsay is admissible." *United States v. Docampo*, 573 F.3d 1091, 1098 (11th Cir. 2009), *cert. denied*, ___ S. Ct. ___, No. 09-7833 (Apr. 5, 2010).

For a defendant convicted of unlawful possession of a firearm, § 2K2.1 of the Guidelines provides for a two-level increase "[i]f any firearm . . . was stolen." U.S.S.G. § 2K2.1(b)(4)(A). The Commentary to the Guidelines states that the enhancement "applies regardless of whether the defendant knew or had reason to believe that the firearm was stolen." U.S.S.G. § 2K2.1 cmt. n.8(B).

Under the current version of Federal Rule of Criminal Procedure 32(i)(3)(B), "for any disputed portion of the presentence report or other controverted matter" the district court must "either (1) make an explicit factual finding as to the allegation; or (2) determine that no such finding is necessary because the matter

controverted will not be taken into account in sentencing the defendant." *United States v. Butler*, 41 F.3d 1435, 1444 (11th Cir. 1995) (citation omitted). An older version of Rule 32 expressly limited it to factual objections, and a committee note on the new wording explains that the intention was to "narrow[] the requirement for court findings." Fed. R. Crim. P. 32, Advisory Committee's Notes (2002).

As an initial matter, we conclude that Pierre failed to preserve the instant sentencing challenge before the district court. Accordingly, we will review it for plain error only. Substantively, the district court did not plainly err by applying a stolen-firearm enhancement. Even assuming that the court erred by not making an explicit finding in this regard, any such error did not affect Pierre's substantial rights because (1) the enhancement would apply to a stolen weapon regardless of whether he stole it or knew it was stolen, (2) it was unnecessary for the jury to make a finding at trial as to the stolen nature of the handgun, and (3) he does not argue that the evidence at sentencing was insufficient to prove by a preponderance of the evidence that the handgun at issue was stolen. Accordingly, we affirm Pierre's sentence.

**AFFIRMED.**