[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 06 2001
THOMAS K. KAHN
CLERK

_____

No. 99-14192
Non-Argument Calendar
_____

D.C. Docket No. 97-00574-CR-JAL


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SUSAN REGUEIRO,

Defendant-Appellant.


_____

Appeal from the United States District Court for the
Southern District of Florida
_____

**(February 6, 2001)**

Before CARNES and MARCUS, Circuit Judges, and HAND*, District Judge.


PER CURIAM:

_____

* Honorable William B. Hand, U.S. District Judge for the Southern District of Alabama,
sitting by designation.

Susan Regueiro appeals her 144-month sentence for conspiracy to defraud the United States by submitting false Medicare claims, 18 U.S.C. § 371, conspiracy to commit money laundering, 18 U.S.C. § 1956(h), and money laundering, 18 U.S.C. § 1956(a)(1)(B)(i). She contends that the district court erred by departing upward for disruption of a government function, pursuant to United States Sentencing Guideline § 5K2.7, based on her involvement in a scheme to defraud Medicare. Because the district court properly concluded that the nature and scope of Regueiro's conduct significantly disrupted the government's provision of Medicare benefits, we affirm its decision to depart pursuant to § 5K2.7.[1]

## I. FACTS

Regueiro pleaded guilty to one count each of conspiracy to defraud the United States, conspiracy to commit money laundering, and money laundering. The charges arose from her involvement in a scheme to defraud Medicare through the submission of false claims for home health care services. Regueiro and codefendant Leopoldo Perez worked as administrators for Mederi of Dade County, Inc., a not-for-profit home health provider that had contracted to provide Medicare-covered services. As part of their fraudulent scheme, Regueiro and Perez established more than 100 nursing groups whose ostensible purpose was to provide

---

[1] This case was originally scheduled for oral argument, but the panel has elected to remove the case from oral argument pursuant to 11th Cir. R. 34-3(f).

home health care services to qualified patients. However, Regueiro and Perez used the nursing groups to bill Medicare for thousands of services that were never performed, or that were performed on patients who were not eligible to receive Medicare benefits. Medicare of Dade County reimbursed Mederi for the false claims through electronic fund transfers to bank accounts controlled by Regueiro and Perez, and they shared in the profits from those false claims. Both of them were extensively involved in all aspects of the scheme, including establishing the nursing groups, recruiting individuals to operate the nursing groups and physicians and nurses to participate in the fraud, and creating false documents to support the fraudulent home health visits. As part of their plea agreements, Regueiro and Perez agreed that the loss to Medicare from their scheme totaled $15,238,489 and that the value of the funds laundered totaled $3,570,907.

Prior to sentencing, the Probation Office prepared a Pre-Sentencing Investigation Report, which it made available to the parties. The PSI assigned Regueiro a base offense level of 20 according to U.S.S.G. § 2S1.1, the guideline applicable to the money-laundering offenses. The PSI then added seven levels to Regueiro's base offense level due to the value of funds laundered, assessed her a four-level enhancement for her role as an organizer or leader, and granted her a three-level reduction for acceptance of responsibility. As a result, Regueiro's total offense level was 28. Neither party filed objections to the PSI.

On September 9, 1999, the district court conducted a final sentencing hearing regarding Regueiro. Prior to that hearing, the district court had notified the parties that it was considering imposing an upward departure on Regueiro because her conduct had significantly disrupted a governmental function. See U.S.S.G. § 5K2.7, p.s. After listening to arguments from both sides at the hearing, the court concluded that a four-level upward departure was warranted. In imposing that departure, the district court cited United States v. Khan, 53 F.3d 507 (2d Cir. 1995), as authority. The district court explained:

> [T]he facts as they have been delineated in this case covered only a small portion of the large scale Medicare fraud industry that [Regueiro] organized and participated in extensively. ... [T]he scheme here disrupted the government's function to efficiently administer the Medicare program and [undermined] the public's confidence in government.

The court also found that Regueiro had organized the fraudulent scheme, had induced doctors and nurses to abuse their positions of trust, and had created corporations to perpetrate and cover up the fraud. Based on all of those facts, the district court concluded that the extent and nature of the disruption and the importance of the government function that was affected warranted a four-level § 5K2.7 departure.

## II. ANALYSIS

Generally, a sentencing court must impose a sentence within a guideline range unless it finds there exists "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." United States v. Hoffer, 129 F.3d 1196, 1200 (11th Cir. 1997) (quoting 18 U.S.C. § 3553(b)). Thus, to depart from the guidelines, the sentencing court must determine (1) whether any factor makes the case atypical, meaning that it takes the case out of the "heartland" of cases involving the conduct described in the applicable guideline, and (2) whether that factor should result in a different sentence. See U.S.S.G. § 5K2.0 ("Presence of any [factor that has not been given adequate consideration by the Sentencing Commission] may warrant departure from the guidelines, under some circumstances, in the discretion of the sentencing court."); Hoffer, 129 F.3d at 1200 (citing Koon v. United States, 518 U.S. 81, 98, 116 S.Ct. 2035, 2046-47 (1996)).

A sentencing court's departure decision involves both factual and legal findings. The court determines whether a case falls outside of the heartland by assessing the facts, and comparing them to the facts of other cases that fall within the heartland of the applicable guideline. Hoffer, 129 F.3d at 1200. To determine if a factor that takes a case out of the heartland should result in a different sentence, the court must decide whether that "factor is forbidden, encouraged, discouraged,

or unaddressed by the guidelines as a potential basis for departure." Id.  If a factor is encouraged, the sentencing court is "authorized to depart from the applicable guideline if the guideline does not already take that factor into account." Id.

With the above framework in mind, we conclude that the district court did not abuse its discretion in departing upward four levels pursuant to § 5K2.7.  See Hoffer, 129 F.3d at 1200 (reviewing departures from otherwise applicable sentencing guideline ranges for abuse of discretion).  Regueiro was sentenced under U.S.S.G. § 2S1.1, the general money-laundering guideline.  Because that guideline does not encompass an interference with the administration of a governmental program, we agree with the district court that Regueiro's conduct takes this case out of the heartland of typical money laundering cases.  See United States v. Gunby, 112 F.3d 1493, 1500-01 & n.11 (11th Cir. 1997) ("[T]he significant disruption of a governmental function is not inherent in the offense of large-scale fraud involving an abuse of public trust  ...."); Khan, 53 F.3d at 518. We also agree that U.S.S.G. § 5K2.7 warrants an upward departure.  Section 5K2.7 states:

> If the defendant's conduct resulted in a significant disruption of a governmental function, the court may increase the sentence above the authorized guideline range to reflect the nature and extent of the disruption and the importance of the governmental function affected.

6

U.S.S.G. § 5K2.7, p.s. Regueiro's conduct significantly disrupted the government's ability to administer its Medicare program. Every time one of the more than 100 nursing groups that Regueiro helped organize and establish fraudulently billed Medicare, the government lost funds that it otherwise could have used to provide medical care to eligible Medicare patients. As the district court explained:

> The Medicare program was created to help provide medical care, and this particular program, for home care services, was specifically created and delineated so persons who were not able to receive medical care otherwise would not be lacking for the medical care they sorely cried out for. Through the fraudulent billing and the loss of over $15 million, those monies are no longer available for the medical care for the persons in this program.

That reasoning is sound and finds support in the Second Circuit's Khan decision. 53 F.3d 507.

Kahn had helped organize an extensive scheme to defraud the government's Medicaid system out of approximately $8 million. Id. at 511. He set up four clinics and two corporations to provide patients with drug prescriptions and to perform medical procedures and tests that those patients did not need. The clinics then billed Medicaid for the unnecessary prescriptions and services. Id. at 511-12. Khan was sentenced under § 2F1.1, the general fraud guideline. Id. at 517-18. The Second Circuit affirmed the district court's decision to depart upward from that

7

guideline on that basis of § 5K2.7 because "[Khan's] scheme ... disrupted the government's function of efficiently administering Medicaid ... [and] undermined the public's confidence in government." Id. at 518. Although Regueiro was sentenced under a different guideline, the same reasoning applies here. The only difference is that Regueiro's scheme was more massive and had a more disruptive effect than the one in Khan.

Regueiro's primary argument on appeal is that the caselaw concerning U.S.S.G. § 5K2.7 does not support the district court's decision to depart upward. See Gunby, 112 F.3d 1493; United States v. Baird, 109 F.3d 856 (3d Cir. 1997); United States v. Horton, 98 F.3d 313 (7th Cir. 1996); United States v. Dayea, 32 F.3d 1377 (9th Cir. 1994); United States v. Murillo, 902 F.2d 1169 (5th Cir. 1990); United States v. Kikumura, 918 F.2d 1084 (3d Cir. 1990). To the contrary, the cases Regueiro relies on suggest that the fraud in this case is precisely the type that supports a § 5K2.7 departure because of interference with the day-to-day functioning of government. See, e.g., Gunby, 112 F.3d at 1503 (affirming § 5K2.7 departure in case of embezzlement of court filing fees); Baird, 109 F.3d at 871-72 (affirming § 5K2.7 departure in case of widespread police misconduct); Murillo, 902 F.2d at 1174 (affirming § 5K2.7 departure in case of selling false immigration documents).

In contrast, the cases that Regueiro relies on in which the § 5K2.7 departure was found inappropriate involve overly attenuated effects on governmental functions.  See Dayea, 32 F.3d at 1381-82 (involuntary manslaughter resulting in death of police officer which produced "stress" in other officers did not warrant § 5K2.7 departure); Kikumura, 918 F.2d at 1116-17 (conduct designed to affect government policy does not constitute attempt to disrupt a governmental function); see also Horton, 98 F.3d at 318 (eight-level upward departure unreasonable for empty bomb threat against federal building).

Regueiro makes two additional arguments.  First, she maintains that the district court improperly relied on the amount of monetary loss in departing upward even though that factor was already taken into account in her sentence.  We disagree.  While the district court made repeated references to the amount of money that the government lost to Regueiro's scheme, it did so only to stress the scope and nature of Regueiro's fraud and the substantial affect that it had on the Medicare program.

Finally, Regueiro argues that the district court's disparate treatment of her and her codefendant Perez violates the sentencing guidelines.  Specifically, she claims that the district court's failure to consider a § 5K2.7 departure for Perez indicates that the court's decision to impose the upward departure was based on

emotion and not on the facts of her case. Regueiro also claims that this disparate treatment violates the principle of uniformity of sentencing that animates the guidelines. We disagree. Disparity between the sentences imposed on codefendants is generally not an appropriate basis for relief on appeal. See United States v. Chotas, 968 F.2d 1193, 1197-98 (11th Cir. 1992) (holding that disparate sentencing among codefendants was adequately considered by the Sentencing Commission and is therefore not an appropriate ground for departure). As we explained in Chotas, "to adjust the sentence of a co-defendant in order to cure an apparently unjustified disparity between defendants in an individual case will simply create another, wholly unwarranted disparity between the defendant receiving the adjustment and all similar offenders in other cases." Id. at 1198 (citations omitted).

### III. CONCLUSION

For the reasons set forth above, we conclude that the district court did not abuse its discretion in departing upward, and AFFIRM the sentence imposed by the district court.