[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 28, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-10938
Non-Argument Calendar

_____

D. C. Docket No. 03-00747-CR-3-ODE-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PHIL CARON GIVENS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(December 28, 2006)**

Before DUBINA, CARNES and WILSON, Circuit Judges.

PER CURIAM:

Phil Caron Givens ("Givens") appeals his convictions and sentence for

conspiracy to possess with intent to distribute at least 1,000 kilograms of marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(vii), and attempted possession with intent to distribute at least 1,000 kilograms of marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(vii) and 18 U.S.C. § 2. Givens argues that there was insufficient evidence at trial to convict him of either count. Givens also argues that at sentencing the district court erred in determining the drug quantity attributable to him. Givens further argues that his sentence is unreasonable because it is "substantially disparate" from the sentences that his co-defendants received. Upon review of the record and upon consideration of the parties' briefs, we discern no reversible error.

BACKGROUND

On July 28, 2004, a federal grand jury returned a second superceding indictment charging Givens and four co-defendants with conspiracy to possess with the intent to distribute at least 1,000 kilograms of marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(vii), and attempted possession with intent to distribute at least 1,000 kilograms of marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(vii) and 18 U.S.C. § 2. Prior to trial, three co-defendants pled guilty. Givens was tried together with co-defendant Raul Moreno Zunigo.

At trial, the evidence established the following. In late October 2003, a

confidential informant ("CI") working with Special Agent Alfredo Ibanez, United States Bureau of Immigration and Customs Enforcement ("ICE"), was contacted by co-defendant Jose Burnias ("Jose"). Jose asked the CI if he knew anyone who could transport a large amount of marijuana from Texas to North Carolina. The CI said that he would look into it and immediately contacted Agent Ibanez. Agent Ibanez, through the CI, planned a controlled delivery, wherein a tractor trailer owned by ICE would transport the marijuana to North Carolina. Once there, ICE agents would arrest or identify other individuals involved in the drug trafficking operation. Agent Ibanez then arranged to pick up the marijuana. After Agent Ibanez successfully coordinated the pick up of the van containing the marijuana, Agent Ibanez took the van to a secure government facility. The estimated weight of the marijuana was 2,650 pounds.

In November 2003, co-defendant Michael Burnias ("Michael"), Jose's brother, contacted Givens about purchasing some of the marijuana that was going to be delivered to North Carolina. Givens agreed to purchase one hundred pounds for $50,000. Since there was such a large quantity of marijuana being transported to North Carolina, Michael testified that he discussed with Givens the possibility of Givens purchasing another five to six hundred pounds.

On December 3, 2003, the tractor trailer, driven by a special crimes

3

investigator, departed Texas for North Carolina. Michael kept Givens informed about status of the marijuana transport. Michael told Givens that he needed $35,000 in payment up front for the one hundred pounds that Givens had agreed to purchase. Michael intended to use the money to pay the person transporting the marijuana upon the driver's arrival in North Carolina.

While in route to North Carolina, Jose told the special agent transporting the marijuana that he was now to deliver the marijuana to Atlanta, Georgia instead of North Carolina. Michael notified Givens of the change in plans. Michael told Givens that he did not have a place to off load the marijuana once it reached Atlanta. Givens informed Michael "that he had the perfect spot" to unload the truck. (R-9 at 456). Givens assured Michael that he was on his way to Atlanta with the money.

On December 7, 2003, Givens met Michael in Atlanta and lead him to the place that Givens had selected to off load the marijuana. After scouting the designated site, Michael gave the directions to Jose and told him to give the directions to the driver who was transporting the marijuana. Later that day, all the defendants arrived at the designated site. Givens arrived in a white van. The truck carrying the marijuana arrived and Givens and the other defendants began to off load the marijuana, which was wrapped in plastic and grey duck tape. At one

4

point, Givens became concerned about a white truck that was parked nearby. Givens thought that it might be the police and went to check out the truck. Givens returned satisfied that it was not the police. Givens continued to off load the marijuana.

When the police moved in to arrest the defendants, Givens ran to his van in an attempt to flee. Givens was unable to start the van and then ran towards a wooded area. Given was apprehend by an ICE agent soon after he entered the woods.

After Givens was arrested, he was taken to the Atlanta Pretrial Detention Center. Keith Jones shared the same housing unit with Givens and testified at trial that Givens told him the details about why he was incarcerated. Jones testified that Givens told him about the truck carrying approximately three thousand pounds of marijuana. Jones testified that Givens claimed responsibility for one thousand six hundred pounds of marijuana and also told Jones that Givens had planned to steal the entire load of marijuana from his co-defendants. The net weight of the marijuana that was seized at the scene was later determined to be 1,314.45 kilograms. The jury convicted Givens and his co-defendant on both counts.

Prior to sentencing, the probation officer prepared a presentence investigation report ("PSI"), which calculated Givens's base offense level as 32,

pursuant to U.S.S.G. § 2D1.1(c)(4). The probation officer determined that Givens was responsible for 1,314.45 kilograms of marijuana. The probation officer determined that Givens had 11 criminal history points, resulting in a criminal history category of V and an advisory sentencing range of 188 to 235 months.

At sentencing, Givens argued that because he was not involved at the outset of the conspiracy, and because his name was not mentioned by any of the co-defendants until the offense conduct took place in Georgia, the scope of his involvement was limited to the one hundred pounds of marijuana that he had intended to purchase. Givens asserted that one hundred pounds was equivalent to approximately forty-five kilograms, and thus, Givens's base offense level should be 20.

The government responded that Givens should be held responsible for the entire 1,314.45 kilograms seized as a result of the controlled delivery. The government argued that the jury had found Givens responsible for at least one thousand kilograms of marijuana. The government further argued that Givens conspired with the other co-defendants to execute the delivery and assisted with the delivery up until the arrests had occurred.

Based on the evidence presented at trial, the district court found that Givens was responsible for 1,314.45 kilograms of marijuana. Specifically, the court found

that there was evidence that Givens had arranged to purchase one hundred pounds of marijuana. The court also found that the evidence clearly showed that Givens was aware that the amount of the marijuana being transported was much larger than one hundred pounds. The court determined that the advisory Guideline range was 188 to 235 months. The court sentenced Givens to 188 months' imprisonment and five years' supervised release for each count, to be served concurrently. The court noted that the sentence was reasonable in light of the Guidelines and after considering the level of Givens's participation in the offense and his extensive criminal history.

## STANDARD OF REVIEW

We review *de novo* "whether there is sufficient evidence to support the jury's verdict." *United States v. Ortiz*, 318 F.3d 1030, 1036 (11th Cir. 2003) (per curiam). On review, the evidence is viewed "in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor." *Id.* (quotation omitted). "[W]e are bound by the jury's credibility determinations, and by its rejection of the inferences raised by the defendant." *United States v. Peters*, 403 F.3d 1263, 1268 (11th Cir. 2005).

A district court's determination of drug quantity used to establish a defendant's base offense level is reviewed for clear error. *United States v.*

7

*Simpson*, 228 F.3d 1294, 1298 (11th Cir. 2000). We review a defendant's ultimate sentence, in its entirety, for unreasonableness in light of the factors in 18 U.S.C. § 3553(a). *See United States v. Winingear*, 422 F.3d 1241, 1246 (11th Cir. 2005) (per curiam).

## DISCUSSION

1. <u>Sufficiency of the Evidence</u>

Givens argues that there was insufficient evidence to convict him of conspiracy to possess with intent to distribute at least 1,000 kilograms of marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(vii), and attempted possession with intent to distribute at least 1,000 kilograms of marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(vii) and 18 U.S.C. § 2. Givens contends that at the time of his arrest, he was only present with the co-defendants because he had agreed to purchase one hundred pounds of marijuana. Givens further argues that the testimony of his co-defendants and the jailhouse informant was not credible and failed to establish that he had prior knowledge of the conspiracy.

In order to sustain a conviction for conspiracy to possess marijuana with intent to distribute, the government must prove beyond a reasonable doubt that "(1) an illegal agreement existed; (2) the defendant knew of it; and (3) the

8

defendant, with knowledge, voluntarily joined it." *United States v. McDowell*, 250 F.3d 1354, 1365 (11th Cir. 2001). The government may establish such proof with circumstantial evidence, and the jury may infer a common plan or scheme from the parties' conduct or other circumstances. *United States v. Hogan*, 986 F.2d 1364, 1374 (11th Cir. 1993). It is not necessary that the government prove the defendant knew or participated in every essential stage of the conspiracy. *United States v. Brito*, 721 F.2d 743, 746 (11th Cir. 1983).

In order to sustain a conviction for attempted possession with the intent to distribute marijuana, the government must prove beyond a reasonable doubt that Givens "(1) acted with the kind of culpability required to possess [marijuana] knowingly and wilfully and with the intent to distribute it; and (2) engaged in conduct which constitutes a substantial step toward the commission of the crime under circumstances strongly corroborative of their criminal intent." *McDowell*, 250 F.3d at 1365.

The evidence supports that (1) Givens knew of a plan to transport a truckload of marijuana from Texas to North Carolina; (2) Givens agreed to purchase one hundred pounds of marijuana and promised to pay $35,000 up front, knowing that the money was needed to pay for transportation of the marijuana; (3) Givens was in contact with a co-defendant throughout the shipment of the load and

9

personally arranged the delivery site for the marijuana in Atlanta; (4) Givens helped unload the marijuana from the truck and acted as a look-out; and (5) Givens claimed responsibility for over one thousand pounds of marijuana and expressed his intent to steal the entire load from his co-defendants. Accordingly, in the light most favorable to the government, there was sufficient evidence to support the jury's determination that an agreement existed between Givens and his co-defendants to violate the narcotics laws, that Givens knew of the conspiratorial goal, and that Givens knowingly joined and participated in this illegal venture. *See McDowell*, 250 F.3d at 1365. Furthermore, in the light most favorable to the government, there was sufficient evidence to support the jury's determination that Givens's actions were consistent with a person who knowingly and wilfully possessed marijuana and intended to distribute it, and that Givens engaged in conduct that constituted a substantial step towards the commission of this crime. *See id.*

As to Givens's arguments regarding the credibility of the testimony of his co-defendants and the jailhouse informant, the jury members were instructed by the district court that as the sole judges of witness credibility, they were free to believe or disbelieve any testimony heard during the trial. In finding Givens guilty of the two counts, the jury found the testimony of the co-defendants and the jailhouse

informant credible and rejected Givens's assertions that he had no knowledge of the agreement and was only present with his co-defendants because he wanted to purchase a small amount of marijuana. We are bound by the jury's credibility determinations. *Peters*, 403 F.3d at 1268. Accordingly, we affirm Givens's convictions.

2.    Calculation of the Drug Quantity

Givens argues that the testimony of his co-defendants establishes that he was only responsible for one hundred pounds of marijuana. He asserts that only the jailhouse informant stated that he had a larger role in the conspiracy, and argues that the informant is not a reliable witness because he was not a participant in the conspiracy and because had an extensive criminal record. Givens contends that the district court's error in calculating the drug quantity attributable to him at sentencing was not harmless because it substantially increased his base offense level.

A district court's determination of drug quantity used to establish a defendant's base offense level is reviewed for clear error. *Simpson*, 228 F.3d at 1298. Pursuant to the Supreme Court's decision in *United States v. Booker*, the Sentencing Guidelines are no longer mandatory. 543 U.S. 220, 264, 125 S. Ct. 738, 767, 160 L. Ed. 2d 621 (2005). Although the Guidelines are advisory, a

11

district court must calculate the advisory sentencing range correctly and must consider it when determining a defendant's sentence. *United States v. Crawford*, 407 F.3d 1174, 1178-79 (11th Cir. 2005). The amount of drugs attributable to a defendant is determined by assessing the defendant's relevant conduct. "[I]n the case of a jointly undertaken criminal activity [relevant conduct includes] . . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). If the case involves drugs, "the defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." U.S.S.G. § 1B1.3, cmt. n. 2.

At sentencing, the district court made an explicit finding that although Givens had agreed to purchase only one hundred pounds of marijuana, he was fully aware that the entire deal was much larger, and therefore, it was reasonable to find him responsible for the entire amount of marijuana involved. The record reflects that Givens knew that his co-defendants planned to transport a truckload of marijuana from Texas to North Carolina. Givens received updates on the status of the shipment and arranged a new delivery site in Atlanta. Givens drove a van to the delivery location, helped to unload the drugs, and kept watch for suspicious

12

vehicles.  Givens also expressed his intent was to take off with the entire shipment.

Based on the evidence in the record, the district court did not clearly err in

attributing the entire load of 1,314.45 kilograms to Givens, and accordingly, did

not err in calculating his base offense level.

### 3.    Reasonableness of Sentence

Givens argues that his sentence is unreasonable because it is "substantially

disparate" from the sentences imposed upon his co-defendants.  This Court reviews

a defendant's ultimate sentence, in its entirety, for unreasonableness in light of the

factors in 18 U.S.C. § 3553(a).  *See Winingear*, 422 F.3d at 1245.  "[N]othing in

*Booker* or elsewhere requires the district court to state on the record that it has

explicitly considered each of the § 3553(a) factors or to discuss each of the §

3553(a) factors."  *United States v. Scott*, 426 F.3d 1324, 1329 (11th Cir. 2005).

Instead, indications in the record that the district court considered facts and

circumstances falling within § 3553(a)'s factors will suffice.  *Id*. at 1329-30.  We

have held that the "[d]isparity between the sentences imposed on codefendants is

generally not an appropriate basis for relief on appeal." *United States v. Regueiro*,

240 F.3d 1321, 1325-26 (11th Cir. 2001) (per curiam).

Here, the district court imposed a reasonable sentence because it considered

the sentencing factors in § 3553(a) along with the parties' arguments and, as shown

13

above, it correctly applied the Guidelines. *See Crawford*, 407 F.3d at 1178-79.

The court specifically stated that it considered the level of Givens's participation in the offense and his extensive criminal history in imposing a sentence of 188 months' imprisonment, which was at the low-end of the Guideline range. Givens's argument that his sentence is unreasonable because it is "substantially disparate" from the sentences of his co-defendants is without merit. The record indicates that Givens had an extensive criminal record, resulting in a criminal history category of V and thus, a higher advisory sentencing range than those co-defendants with lower criminal history scores. Moreover, Givens did not receive an adjustment for acceptance of responsibility, unlike Jose and Michael, who pled guilty to their offenses and cooperated with the government by testifying at Givens's trial. Accordingly, Givens's sentence of 188 months' imprisonment is reasonable. Accordingly, we find no reversible error and affirm.

**AFFIRMED**.