[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 21, 2007
THOMAS K. KAHN
CLERK

No. 06-15975
Non-Argument Calendar
_____

D. C. Docket No. 06-20367-CR-PCH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MIGUEL BERNAZAL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

**(December 21, 2007)**

Before ANDERSON, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Miguel Bernazal appeals his consecutive 180-month and 100-month sentences, imposed after a jury trial, for, respectively, conspiring to possess with intent to distribute less than five kilograms of cocaine, a violation of 21 U.S.C.

§§ 846 and 841(a)(1), and conspiring to interfere with commerce by threats or violence, a violation of 21 U.S.C. § 846 and 18 U.S.C. § 1951(a). On appeal, Bernazal argues that the district court erred in three ways at sentencing: (1) in determining his offense level, by using a quantity of drugs greater than the quantity found by the jury; (2) by considering his co-defendants' sentences when determining his sentence; and (3) by imposing an unreasonable sentence by treating the Guidelines as presumptively correct.[1] After careful review, we affirm.

We normally review the district court's factual findings for clear error, and its application of the Sentencing Guidelines de novo. United States v. Ndiaye, 434 F.3d 1270, 1281 (11th Cir.), cert. denied, 127 S. Ct. 128 (2006). However, objections not raised clearly before the district court are reviewed for plain error. United States v. Zinn, 321 F.3d 1084, 1087 (11th Cir. 2003). "To find reversible error under the plain error standard, we must conclude that (1) an error occurred, (2) the error was plain, and (3) the error affected substantial rights." Id. at 1087. Once plain error is found, we have the discretion to correct the error (4) if we find that the error "seriously affects the fairness, integrity, or public reputation of the

---

[1]    In his brief, Bernazal makes isolated references to double jeopardy and his right to an individualized sentencing determination. However, because these assertions do not plainly and prominently raise any issues for review, we will not address them. See United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) ("Under our caselaw, a party seeking to raise a claim or issue on appeal must plainly and prominently so indicate. Otherwise, the issue -- even if properly preserved at trial -- will be considered abandoned.").

judicial proceedings." United States v. Dudley, 463 F.3d 1221, 1227 (11th Cir. 2006).

We review the defendant's ultimate sentence for reasonableness. United States v. Winingear, 422 F.3d 1241, 1244 (11th Cir. 2005). "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both that record and the factors in § 3553(a)." United States v. Talley, 431 F.3d 786, 788 (11th Cir. 2005).

The parties are familiar with the relevant facts and we only summarize them here. On June 15, 2006, Bernazal was indicted for conspiracy (Count One) and attempt (Count Two) to possess with intent to distribute five kilograms or more of cocaine, violations of 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1); and conspiracy (Count Three) and attempt (Count Four) to violate the Hobbs Act by interfering with commerce through actual and threatened violence, violations of 21 U.S.C. § 846 and 1951(a), (b)(1), and (b)(3). He pled not guilty and proceeded to a jury trial.

At trial, the government presented the testimony of Detective Wayne Peart who worked in the High Intensity Drug Trafficking Area, a joint operation between Peart's employer, Miami-Dade Police Department ("MDPD"), and the Bureau of

Alcohol Tobacco Firearms and Explosives ("ATF"). Co-conspirators Orlando Dupeyron and Luis Salcedo-Rey also testified for the government.

The scheme, and Bernazal's involvement in it, was as follows. A confidential informant ("CI"), purporting to act for a disgruntled drug dealer who wanted to exact revenge on his employer, made arrangements with Claudio Morales and Orlando Dupeyron to steal 75 kilograms of cocaine that was being smuggled from Colombia to a stash-house in Miami. In January and March of 2006, the CI, Morales and Dupeyron had a series of meetings at Scotty's Landing, in Coconut Grove, concerning the details of the robbery. They discussed the need for more participants, as well as for firearms, since there would be armed men at the stash-house and accompanying the cocaine while it was in transport to the stash-house. They decided that the robbery would take place on the street, while the cocaine was in transport in Miami, rather than at the stash-house. The CI and co-conspirators Morales and Dupeyron also discussed the need to find a participant willing to "take down" the Colombian supplier's representative, who would be armed and in the car during the transport of the cocaine.

Co-conspirator Salcedo-Rey testified that Dupeyron recruited him to participate in the robbery, and asked him to recruit others. Salcedo-Rey met with Bernazal the day before the robbery, at which time Salcedo-Rey explained the

robbery to Bernazal, including that there would be between 70 and 100 kilograms of cocaine and that a Colombian, who would be accompanying the cocaine and would be armed, needed to be "taken down." Bernazal agreed to commit the robbery and to "tak[e] care of" the Colombian.

On the day of the robbery, Bernazal, who drove to the rendezvous point in a separate car, met with the other participants and was given a gun to use during the robbery. He then followed the other robbery participants' vehicle. Before the robbery could be executed, Morales, Dupeyron, Salcedo-Rey, and another co-conspirator were arrested. Bernazal, who the police did not initially realize was involved since he was in a different car, subsequently was arrested.

Bernazal presented no evidence in his defense. The jury convicted Bernazal on Counts One and Three (the conspiracy counts) and acquitted him on Counts Two and Four (the attempt counts). As to Count One, the jury found that the substance containing cocaine was not five kilograms or more. Bernazal then proceeded to sentencing.

The Presentence Investigation Report ("PSI") grouped both counts of Bernazal's conviction together, pursuant to U.S.S.G. § 3D1.2(c), and used the offense level applicable to the most serious of the counts, which was Count One. Bernazal's base offense level was 36, under U.S.S.G. § 2D1.1, because he violated

21 U.S.C. § 846 and was accountable for 75 kilograms of cocaine. The PSI increased Bernazal's offense level by two levels, under U.S.S.G. § 2D1.1(b)(1), because a dangerous weapon was possessed. With an adjusted offense level of 38 and a criminal history category VI, Bernazal faced a Guidelines range of 360 months to life imprisonment.

The PSI also noted that the statutory maximum sentence for both counts against Bernazal was 20 years and that, pursuant to U.S.S.G. § 5G1.2(d), when the sentence imposed on a count carrying the highest statutory maximum is less than the total punishment called for by the Guidelines, the sentence imposed on one or more of the other counts shall run consecutively, to the extent necessary to produce a combined sentence equal to the total punishment. Bernazal filed no objections to the PSI.

At the sentencing hearing, the government stated that it was seeking the maximum penalty possible under the statute, which would be 240 months. The district court then heard from the defense, but first noted, contrary to the government's position, that Bernazal could be sentenced to a sentence within the 360-months-to-life Guidelines range because there were multiple counts, for which § 5G1.2(d) mandated imposing consecutive terms. Bernazal responded that he understood the district court could give him two 180-month sentences, to run

6

consecutively, and arrive at the 360-month sentence called for by the Guidelines without violating the 20-year statutory maximum sentence on each count. At this point, the government reiterated that it is seeking a <u>below</u>-Guidelines sentence of 240 months because such a sentence would be consistent with the 212-month and 292-month sentences received by Bernazal's co-defendants. The district court again disagreed with the government's position, stating: "The others accepted responsibility, which is based on the guidelines. . . . [They] stepped up and acknowledged their participation and got credit for that." The government again said it was seeking only a 240-month sentence. The district court responded:

> I don't know how you can justify that the aim of the government is to kind of compare relationship between those [conspirators who accepted responsibility] as to how you come up with that. Someone plead[s] guilty, accepts responsibility and gets, according to the government's recommendation, 52 months more than someone who didn't accept responsibility and who actually had a firearm in his possession. I am not following that rationale.
>
> . . . .
>
> I am not going to do that, folks. I think you should, as the government, do a better job.

The district court then said that it had considered the statements of the parties and the PSI, and that the Guidelines were advisory. The court sentenced Bernazal to 180 months as to Count One and 100 months as to Count Three, with the terms to run consecutively. The district court noted that it arrived at this

7

sentence by considering all of the factors it was required to consider under 18 U.S.C. § 3553 and that it had particularly considered the seriousness of the offense, the need to protect the public, and the need to deter Bernazal from committing future crimes. This appeal followed.

After United States v. Booker, 543 U.S. 220 (2005), we established a two-step process for district courts to use in calculating sentences. Talley, 431 F.3d at 786. First, the district court must consult and correctly calculate the range recommended by the Sentencing Guidelines. Id. In calculating the Guidelines range, the district court is free to consider any information with sufficient indicia of reliability. See U.S.S.G. § 6A1.3. Second, the district court must fashion a reasonable sentence, after considering the factors enumerated in § 3553(a). Talley, 431 F.3d at 786.

Bernazal's first argument -- that the district court miscalculated his Guidelines range by relying on an amount of cocaine, different from the amount found by the jury -- concerns the first step of the Talley test. In determining the appropriate sentence, a district court may consider all available information, including information available at trial. United States v. Chau, 426 F.3d 1318, 1322-23 (11th Cir. 2005). Contrary to Bernazal's assertion, district courts are permitted under an advisory Guidelines scheme to apply extra-verdict

enhancements based solely on judicial factfinding; there is no violation of a defendant's constitutional rights so long as the court applies the Guidelines in an advisory fashion. See id. at 1324; United States v. Faust, 456 F.3d 1342, 1348 (11th Cir. 2006) (noting that "nothing in Booker prohibits the courts from considering relevant conduct when the Sentencing Guidelines are applied as advisory."). In the instant case, the district court expressly mentioned the advisory nature of the Guidelines twice, prior to imposing sentence. On this record, Bernazal has not shown error, let alone plain error, in the district court's reliance on relevant conduct, which the court found by a preponderance of the evidence, to calculate the applicable Guidelines range. See U.S.S.G. § 6A1.3; Duncan, 400 F.3d at 1304-05.

We likewise are unpersuaded by Bernazal's second argument, raised for the first time on appeal, that the district court erred by relying on his co-conspirators' sentences for the same offense when determining his sentence. After a district court has correctly calculated the advisory Guidelines range, it is free to impose a more severe or more lenient sentence, which we review for reasonableness. United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005). A district court should be guided by the factors set for in 18 U.S.C. § 3553(a). United States v. Winingear, 422 F.3d 1241, 1246 (11th Cir. 2005). The § 3553(a) factors include

the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide for just punishment; the need to protect the public; and the advisory Guidelines range. United States v. Scott, 426 F.3d 1324, 1328-29 (11th Cir. 2005). Notably, § 3553(a) also lists this factor: "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Given that § 3553(a) expressly lists "the need to avoid unwarranted sentencing disparities" as one of the factors a court may consider, we are hard-pressed to find error, or for that matter, plain error based on the district court's careful consideration of Bernazal's co-conspirators' sentences.[2]

Finally, the district court's ultimate sentence was not unreasonable. The district court is not required to "state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005). We have stated, "[a]lthough sentencing courts must be guided by the § 3553(a) factors, nothing in Booker or

---

[2]   The cases Bernazal relies on are inapposite since they both concerned pre-Booker departures from the Guidelines range to prevent disparity between sentences. United States v. Regueiro, 240 F.3d 1321, 1325-26 (11th Cir. 2001); United States v. Chotas, 968 F.2d 1193, 1197-98 (11th Cir. 1992) (pre-Booker departure from the Guidelines range under U.S.S.G. § 5K2.0). Neither of these cases addressed the permissibility of a variance from the Guidelines range based on § 3553(a), as occurred here.

10

elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors. Rather, an acknowledgment by the district judge that he or she has considered the § 3553(a) factors will suffice." United States v. Amedeo, 487 F.3d 823, 832 (11th Cir. 2007) (quotations and citation omitted), pet. for cert. filed, (Sept. 25, 2007) (No. 07-6968). Moreover, we will not substitute our judgment in weighing the relevant factors. United States v. Williams, 456 F.3d 1353, 1363 (11th Cir. 2006), cert. dismissed, 127 S. Ct. 3040 (2007).

Bernazal has not shown that the district court imposed an unreasonable sentence by giving undue weight to the Sentencing Guidelines. The district court stated that it had considered not only the advisory Guidelines range, but also the PSI, the advisory Guidelines range, the need to protect the public, the need to deter Bernazal from committing other crimes, and the seriousness of the offense. In addition, based on its consideration of the § 3553(a) factors, the court gave Bernazal a 280-month sentence that was 80 months below the 360-month bottom of the guidelines range. Due to the fact that the district court explicitly considered other § 3553(a) factors and gave Bernazal a sentence well below the Guidelines range, it does not appear that the district court gave undue weight to the Guidelines range. See Williams, 456 F.3d at 1363. In short, Bernazal has not satisfied his

burden of showing that his ultimate sentence is unreasonable.  See Talley, 431 F.3d at 788.

**AFFIRMED.**