[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-10015
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 5, 2010
JOHN LEY
CLERK

D. C. Docket No. 4:08-cr-00008-CDL-GMF-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SHAWN BUNKLEY,
a.k.a. Biscuit,
a.k.a. Shawn Maurice Bunkley,
a.k.a. Brian Lord Bunkley,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(October 5, 2010)

Before BLACK, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

Shawn Bunkley appeals his 110-month sentence imposed after pleading guilty to conspiring to possess more than 500 grams of cocaine with the intent to distribute it, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B)(ii). Bunkley claims that his upward variance sentence is substantively unreasonable. He also claims that his sentence violates his rights under the Fifth and Sixth Amendments because the district court considered testimony he gave as a cooperating witness in another trial and unreliable hearsay in finding him responsible for drug quantities in excess of the amount stipulated in his plea agreement. After review, we hold that the district court imposed a substantively reasonable sentence and did not abuse its discretion. We also hold that the district court did not err in considering hearsay testimony at sentencing. Accordingly, we affirm.

I.

Bunkley was a participant in a major drug trafficking organization in the Columbus, Georgia area headed by Torrence Hill. In the five months between October 2005 and February 2006, Hill's organization moved approximately 300 kilograms of cocaine into the Columbus area. Bunkley trafficked in multi-kilogram quantities of cocaine, and was one of the primary drug distributors in Hill's organization. He was also the closest connection to Hill's drug supply source, second only to Hill himself.

A joint federal-state investigation ultimately led to the arrest of Hill, Bunkley, and others in Hill's organization. Through execution of a series of search warrants, agents recovered more than 260 kilograms of cocaine, 848 kilograms of marijuana, and lesser quantities of crack cocaine. Agents also seized more than $500,000 in cash and a drug ledger representing more than $2 million in uncollected drug proceeds.

Bunkley was indicted with other members of Hill's organization. He was charged with conspiring to distribute and possess with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 846, and distributing and possessing with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 18 U.S.C. § 2. Bunkley later pleaded guilty pursuant to a plea agreement to a superseding information charging him with conspiring to possess with intent to distribute 500 grams or more of cocaine. Bunkley agreed to cooperate with the government and, in return, the government agreed to bring his cooperation to the district court's attention and to seek a reduction in sentence if Bunkley provided substantial assistance. The plea agreement stipulated that "for purposes of computing the guideline range pursuant to USSG Section 1B1.3, Relevant Conduct, the amount of contraband attributable to [Bunkley] is greater than 500 grams but less than 2 kilograms of . . .

cocaine."

In his plea agreement, Bunkley agreed that the district court has authority to impose a sentence greater than the advisory guidelines range. He also agreed that the district court could determine any pertinent fact at sentencing by a preponderance of the evidence and could consider any reliable information, including hearsay. And finally, Bunkley expressly agreed that the drug-quantity stipulation was not binding on the district court. At the change-of-plea hearing, Bunkley again acknowledged that the district court was not required to follow the government's recommendations in the plea agreement and that it could impose a sentence higher than the applicable guideline range.

After accepting Bunkley's guilty plea, the district court accepted guilty pleas from Hill and a number of other co-conspirators and imposed sentences in those cases. Based on the evidence presented in those proceedings, the district court became concerned that the stipulated amount of cocaine in Bunkley's plea agreement did not accurately reflect his role in Hill's organization and the seriousness of his criminal conduct. As a result, the district court continued Bunkley's sentencing and advised the parties that it intended to question investigators so that it could make an independent determination of the amount of drugs attributable to Bunkley. The court also "put[ Bunkley] on notice that . . . [it]

4

may consider relevant conduct that's different than . . . or shows more responsibility for more drugs than what the government has agreed to."[1]

The district court then presided over the trial of Hill's attorney, John Mark Shellnut, who was charged with aiding and abetting Hill's drug conspiracy and money laundering. During that trial, Bunkley testified on behalf of the government that he had personally delivered $125,000 in drug proceeds to Shellnut at Hill's request. Bunkley also testified that as part of Hill's organization he had trafficked in "up to 25 kilograms" of cocaine at a time. On cross-examination, he agreed with defense counsel that the drug-quantity stipulation in his plea agreement did not accurately reflect the extent of his criminal conduct and that he had distributed "well over 200 kilo[grams]" of cocaine in the Columbus area.

Following the Shellnut trial, the district court reconvened Bunkley's sentencing hearing and called an investigating officer, Jonathan Memmo, to testify about the extent of Bunkley's involvement in Hill's drug distribution organization.[2] The district court admonished Officer Memmo that his testimony should not be based on information Bunkley provided in cooperating with the government, and

---

[1] The district court permitted Bunkley to file written objections to its proposed course of action. In his response, Bunkley conceded that the district court was not bound by the drug-quantity stipulation and that it had the authority to hold a hearing to determine relevant conduct.

[2] The district court determined that it would call and question Officer Memmo because Bunkley's plea agreement precluded the government from putting on evidence that contradicted the drug-quantity stipulation.

5

Officer Memmo repeatedly reaffirmed that his testimony was based on information "separate and independent" from "anything Mr. Bunkley said to [him] or anyone with the government." He agreed that Bunkley was a "significant player" in Hill's organization and confirmed that Bunkley was "dealing substantially more than 500 grams to 2 kilograms of cocaine." Officer Memmo explained that he had received information from two different co-conspirators regarding Bunkley's drug distribution: one stated that Bunkley had received about 63 kilograms of cocaine and handled more than $700,000 in drug proceeds; the other stated that, at Hill's direction, he had personally delivered an additional 75 kilograms of cocaine to Bunkley for distribution.[3]

Based on Officer Memmo's testimony, the district court determined that Bunkley was responsible for trafficking in 138 kilograms of cocaine, which the district court described as a "conservative estimate . . . of his involvement in the drug conspiracy." The district court observed that Bunkley's testimony in the Shellnut trial supported its finding and determined that neither United States Sentencing Guidelines § 1B1.8 (Nov. 2009) nor the Fifth Amendment prevented it from considering that testimony in fashioning an appropriate sentence above the

_____

[3] Officer Memmo identified one of these individuals as Cortez Johnson. He was the person in Hill's organization responsible for storing cocaine prior to its distribution, and the person to whom Bunkley delivered the cocaine he transported from Alabama. Johnson was arrested with 43 kilograms of cocaine and indicted along with Bunkley.

guideline range. The district court emphasized, however, that "Agent Memmo's testimony, independent from any statements or information obtained from this defendant pursuant to his cooperation agreement with the government, substantiates relevant conduct of 138 kilograms of cocaine." The district court reiterated this point in a detailed sentencing order, explaining that "the testimony of Agent Memmo independently supported the Court's findings and sentence."

In accordance with U.S.S.G. § 1B1.8, the district court calculated Bunkley's advisory guideline range using the drug-quantity stipulation in his plea agreement. With a criminal history category of I, a two-level reduction under U.S.S.G. § 2D1.1(b)(11), and a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, it determined that Bunkley's advisory guideline range was 37 to 46 months. After considering the guideline range and Officer Memmo's testimony, however, the district court found that a sentence outside the guideline range was warranted. In determining the extent of any variance, it considered the fact that the advisory guideline range for a defendant, like Bunkley, responsible for trafficking in 138 kilograms of cocaine would be 108 to 135 months. After giving Bunkley credit for substantial assistance and acceptance of responsibility, it determined that an upward variance sentence of 110 months was "consistent with and required by the sentencing considerations enumerated in 18 U.S.C. § 3553."

The district court explained that this sentence

> takes into consideration the true nature and circumstances of the offense and the history and characteristics of Defendant. It reflects the actual serious nature of the illegal conduct in which Defendant was engaged and promotes respect for the law. In addition, it provides a just punishment for the offense, particularly in light of the sentences given others similarly situated to Defendant. The sentence should also afford adequate deterrence for this Defendant in the future and for others who may contemplate engaging in similar unlawful conduct. Finally, the sentence will protect the public for a reasonable period of time from further crimes of this Defendant.

Although the district recognized that its sentence could adversely affect other defendants' willingness to enter into plea agreements and cooperate with the government, it determined that these concerns were outweighed by the need to promote respect for the law and to deter others from engaging in similar criminal conduct. Bunkley now appeals his sentence.

## II.

Although not clearly delineated, Bunkley appears to raise five basic arguments on appeal. First, he contends that his sentence is substantively unreasonable because the district court failed to consider the disparity between Bunkley's sentence and the more lenient sentences some of his co-conspirators received and failed to give Bunkley appropriate credit for his substantial assistance. Second, he claims that the district court effectively breached his plea agreement by declining to accept the drug-quantity stipulation, and that the district court's

8

decision to vary upward violates "public policy" because defendants will no longer agree to cooperate with the government. Third, he claims that the district court erred by relying on "unreliable hearsay testimony" from the two co-conspirators, which had not been subjected to cross-examination. Fourth, he argues that the district court violated his Fifth Amendment right against self-incrimination by considering Bunkley's testimony in the Shellnut trial. And finally, he claims that the government has breached its plea agreement by filing an appellate brief in this case. We address each contention in turn.

We review de novo constitutional sentencing issues. United States v. Cantellano, 430 F.3d 1142, 1144 (11th Cir. 2005). We review the substantive reasonableness of a sentence for abuse of discretion. Gall v. United States, 552 U.S. 38, 46, 51, 128 S. Ct. 586, 594, 597 (2007). This reasonableness review is "deferential," requiring us to determine "whether the sentence imposed by the district court fails to achieve the purposes of sentencing as stated in section 3553(a)." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). "In reviewing the reasonableness of a sentence outside the Guidelines range, appellate courts may therefore take the degree of variance into account and consider the extent of a deviation from the Guidelines," in addition to the sentencing court's justifications. Gall, 552 U.S. at 47, 128 S. Ct. at 594-95. An appellate court may

not presume that a sentence outside the guidelines is unreasonable and must give "due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Id. at 51, 128 S. Ct. at 597. The fact that the court of appeals "might reasonably have concluded that a different sentence was appropriate" is not sufficient to justify reversal. Id.; see also Talley, 431 F.3d at 788 ("A district court may impose a sentence that is either more severe or lenient than the sentence we would have imposed, but that sentence must still be reasonable."). The burden of proof is on the party challenging the reasonableness of the sentence. United States v. Thomas, 446 F.3d 1348, 1351 (11th Cir. 2006).

A.

We conclude that the district court's sentence was substantively reasonable on the facts of this case. We have repeatedly recognized that there is a "range of reasonable sentences from which the district court may choose," Talley, 431 F.3d at 788, and we will remand for resentencing only if we are "'left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case,'" United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008) (quoting United States v. McBride, 511 F.3d 1293, 1297–98 (11th Cir. 2007)). Here, the district court weighed Bunkley's role

10

in the offense and the fact that he trafficked in 138 kilograms of cocaine, the need to avoid sentencing disparities with other defendants who traffick in similarly large quantities of cocaine, and the need to promote adequate respect for the law and to deter criminal conduct. Based on these considerations, it imposed a sentence well below the statutory maximum of 40 years. On the record before us, we cannot say that the district court committed "a clear error of judgment" in imposing the sentence that it did.

Bunkley contends that the district court failed to consider adequately 18 U.S.C. § 3553(a)(6), which requires district courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." This argument is unpersuasive for two reasons. First, the record demonstrates that the district court did in fact consider the need to avoid sentencing disparities in deciding upon a 110-month sentence. Indeed, the district court explained that a sentence in the guideline range resulting from the drug-quantity stipulation in the plea agreement "is typically given to the most modest street-level dealer," and it expressly found that Bunkley's 110-month sentence was warranted "in light of the sentences given [to] others similarly situated to [him]." Bunkley's contention that the district court failed to consider this factor is therefore meritless.

11

Second, we disagree that Bunkley's sentence is unreasonable because two of his codefendants were placed on pretrial diversion. "Disparity between the sentences imposed on codefendants is generally not an appropriate basis for relief on appeal." United States v. Regueiro, 240 F.3d 1321, 1325–26 (11th Cir. 2001). As we have explained, "'to adjust the sentence of a co-defendant in order to cure an apparently unjustified disparity between defendants in an individual case will simply create another, wholly unwarranted disparity between the defendant receiving the adjustment and all similar offenders in other cases.'" Id. at 1326 (quoting United States v. Chotas, 968 F.2d 1193, 1198 (11th Cir. 1992)). Furthermore, individuals placed on pretrial diversion are not similarly situated to Bunkley because they were never prosecuted or convicted of any conduct. See United States v. Spoerke, 568 F.3d 1236, 1252 (11th Cir. 2009).

Finally, we reject Bunkley's claim that the district court failed to provide credit for his acceptance of responsibility and substantial assistance. The record clearly shows that the district court selected a sentence at the low end of the variance range precisely for these reasons. The district court's sentence was not an abuse of discretion.

## B.

The district court did not effectively breach Bunkley's plea agreement by

12

declining to accept the drug-quantity stipulation.  The district court was not a party

to the agreement, and therefore could not breach it.  Nor did it err by refusing to

accept blindly the stipulation in Bunkley's plea agreement and making factual

findings to determine the basis for Bunkley's sentence.  District courts are not

bound by stipulated facts in a defendant's plea agreement.[4]  See United States v.

Forbes, 888 F.2d 752, 754 (11th Cir. 1989).  We have explained that "'it is not

appropriate for the parties to stipulate to misleading or non-existent facts, even

when both parties are willing to assume the existence of such "facts" for purposes

of the litigation.'"  Id. (quoting U.S.S.G. § 6B1.4 cmt. (Nov. 1987)).  "Stipulations

are encouraged to aid, but not to supplant, the sentencing court's fact-finding."  Id.

Although "stipulations are expected to be accurate and complete," the district court

"cannot rely exclusively upon stipulations in ascertaining factors relevant to the

determination of sentence."  Id. (quotation omitted).  Rather, the district court need

only "consider the stipulation, together with the results of the presentence

investigation, and any other relevant information" in determining the factual basis

for the sentence.  Id. (quotation omitted).  The district court did not err by refusing

---

[4] As stated above, Bunkley repeatedly acknowledged prior to his sentencing that the district court was not bound by the drug-quantity stipulation and remained free to impose a sentence up to the statutory maximum.  His plea agreement expressly states that "[n]othing herein limits the sentencing discretion of the Court" and that the district court "has the authority . . . to impose a sentence that is more severe . . . than the sentence called for by the guidelines." The district court reiterated this point during the change-of-plea hearing, advising Bunkley on at least four separate occasions that his sentence may exceed the advisory guideline range.

13

to accept the drug-quantity stipulation and finding facts relevant to Bunkley's sentence.

C.

We further conclude that the district court did not err by relying on hearsay testimony from Officer Memmo at sentencing. To the extent Bunkley claims that the district court erred because the statements from the co-conspirators were not subject to cross-examination, his contention is without merit. It is well established that the Sixth Amendment right to confrontation is a trial right that does not apply at sentencing. See, e.g., Cantellano, 430 F.3d at 1146 ("The right to confrontation is not a sentencing right."); accord United States v. McNair, 605 F.3d 1152, 1123 n.112 (11th Cir. 2010).

Insofar as Bunkley claims that this testimony was so unreliable as to violate his due process rights, we disagree.

> A sentencing court may consider any information, (including hearsay), regardless of its admissibility at trial, in determining whether factors exist that would enhance a defendant's sentence, provided that the evidence has sufficient indicia of reliability, the court makes explicit findings of fact as to credibility, and the defendant has an opportunity to rebut the evidence.

United States v. Baker, 432 F.3d 1189, 1253 (11th Cir. 2005); see also U.S.S.G. § 6A1.3(a) (Nov. 2009) ("[T]he court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided

14

that the information has sufficient indicia of reliability to support its probable accuracy."). A defendant does have a due process right not to be sentenced based on false or unreliable information. See United States v. Reme, 738 F.2d 1156, 1167 (11th Cir. 1984). To prevail on a due process challenge to the consideration of hearsay testimony, however, the defendant bears the burden of proving that the challenged testimony is materially false or unreliable. See United States v. Bourne, 130 F.3d 1444, 1447 (11th Cir. 1997); United States v. Taylor, 931 F.2d 842, 847 (11th Cir. 1991); United States v. Rodriguez, 765 F.2d 1546, 1555 (11th Cir. 1985).

Bunkley has not shown that the Officer Memmo's testimony was materially false or unreliable. The district court expressly found to the contrary that Officer Memmo's testimony was credible. Officer Memmo specifically identified the co-conspirators during the sentencing hearing, including Cortez Johnson, a co-conspirator who pleaded guilty to participating in Hill's organization and was sentenced by the district court. Bunkley was aware that the district court intended to call investigators to establish his role in the conspiracy, and Bunkley was permitted to thoroughly cross-examine Officer Memmo regarding the information he received from the co-conspirators. What is more, the statements of the co-conspirators, as related by Officer Memmo, were corroborated by the undisputed

15

facts in the presentence investigation report ("PSR"), which found that Bunkley was responsible for more than a hundred kilograms of cocaine. Because Bunkley did not object to these facts in the PSR, he is deemed to have admitted them for purposes of sentencing. See, e.g., United States v. Beckles, 565 F.3d 832, 844 (11th Cir. 2009) (explaining that "[f]acts contained in a [PSR] are undisputed and deemed to have been admitted unless a party objects to them before the sentencing court with specificity and clarity" and that "[i]t is the law of this circuit that a failure to object to allegations of fact in a [PSR] admits those facts for sentencing purposes" (quotations omitted)). On this record, the district court did not err by basing its sentence on Officer Memmo's testimony.[5]

## D.

Finally, we address Bunkley's contention that the government breached his plea agreement by filing a brief in this appeal supporting the district court's sentence. We review de novo whether the government breached a plea agreement. United States v. Mahique, 150 F.3d 1330, 1332 (11th Cir. 1998). "The government is bound by any material promises it makes to a defendant as part of a plea agreement that induces the defendant to plead guilty." United States v.

---

[5] Given our conclusion that the district court did not err in basing its sentence on Officer Memmo's testimony, we need not consider whether the district erred by considering Bunkley's testimony in the Shellnut trial because any error was harmless.

16

Taylor, 77 F.3d 368, 370 (11th Cir. 1996). "Whether the government violated the agreement is judged according to the defendant's reasonable understanding at the time he entered his plea." United States v. Boatner, 966 F.2d 1575, 1578 (11th Cir. 1992).

We conclude that the government did not breach the plea agreement by filing a brief in this appeal. As part of his plea agreement, the government stipulated to the quantity of drugs attributable to Bunkley. The government agreed that any information Bunkley provided through his cooperation with the government would not be used to calculate his advisory guideline range, and it agreed to move for a reduction in sentence if Bunkley provided substantial assistance. The government fully complied with these obligations.

Filing a brief on appeal in support of the district court's sentence does not run afoul of the government's contractual obligations to Bunkley. Only two provisions in the plea agreement relate to appeals from the district court's sentence. The first pertains solely to circumstances under which either party would be permitted to appeal the sentence imposed. This provision does not encompass any other aspect of the appeal process, much less limit the government's ability to respond to any appeal Bunkley filed. The second specifically provides that "nothing in this plea agreement shall affect the government's right or obligation to

17

appeal."  Neither of these provisions creates a reasonable understanding that the government would not file an appellate brief in support of the district court's sentence.  That being the case, the government did not breach Bunkley's plea agreement.  See United States v. Winters, 411 F.3d 967, 975 (8th Cir. 2005); United States v. Colon, 220 F.3d 48, 51–53 (2d Cir. 2000).

AFFIRMED.