[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-12076
Non-Argument Calendar

_____

D.C. Docket No. 2:14-cr-00385-LSC-JEO-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DEMARQUES FELTON KING,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(December 30, 2015)

Before TJOFLAT, MARCUS and JILL PRYOR, Circuit Judges.

PER CURIAM:

After conditional guilty pleas to carjacking (Count 1) and the associated

discharge of a firearm (Count 2), Demarques Felton King appeals his convictions

and 300-month total sentence and the denial of his motion to suppress evidence. On appeal, King argues that: (1) the district court erred by denying King's motion to suppress when Deputy Sheriff Patrick May violated King's Fourth Amendment protection against unreasonable searches and seizures; and (2) the district court did not comply with the factors under 18 U.S.C. § 3553 because of the disparity between the sentence for King's accomplice, Eric Dewayne Washington, and King. After thorough review, we affirm.

Because a motion to suppress evidence presents a mixed question of law and fact, we review "the district court's factual findings for clear error, and its application of the law to the facts de novo." United States v. Lewis, 674 F.3d 1298, 1302-03 (11th Cir. 2012) (quotation omitted). All facts are construed "in the light most favorable to the prevailing party below," and we afford "substantial deference to the factfinder's credibility determinations, both explicit and implicit." Id. at 1303 (quotation omitted). We review the sentence a district court imposes for "reasonableness," which "merely asks whether the trial court abused its discretion." United States v. Pugh, 515 F.3d 1179, 1189 (11th Cir. 2008) (quoting Rita v. United States, 551 U.S. 338, 351 (2007)).

First, we are unpersuaded by King's claim that the district court erred by denying his motion to suppress. The Fourth Amendment provides a right "against unreasonable searches and seizures." U.S. Const. amend. IV. Where officers enter

a property, including the curtilage, for the purpose of gathering evidence, they have engaged in a "search" within the meaning of the Fourth Amendment. Florida v. Jardines, 569 U.S. ___, 133 S. Ct. 1409, 1414 (2013).  A warrantless search is presumptively unreasonable; however, officers may conduct a warrantless search of a residence under exigent circumstances. Brigham City v. Stuart, 547 U.S. 398, 403 (2006).  The exigent circumstances doctrine extends to situations involving the hot pursuit of a fleeing suspect. Id.

Under the hot pursuit doctrine, police officers may enter premises without a warrant when they are in hot pursuit of a fleeing suspect. See United States v. Santana, 427 U.S. 38, 42-43 (1976).  A "hot pursuit means some sort of a chase, but it need not be an extended hue and cry 'in and about [the] public streets.'" Id. The Supreme Court has indicated that a claim of hot pursuit is "unconvincing" where there was no "immediate and continuous pursuit of the petitioner from the scene of a crime." Welsh v. Wisconsin, 466 U.S. 740, 753 (1984).

Officers have an "implicit license" to enter onto a person's property to knock and speak with the occupant, as "any private citizen might do." Jardines, 133 S.Ct. at 1415-16 (quotation omitted).  Even if the officers make "a minor departure from the front door" in an effort to speak with the occupant of a home, they do not exceed the scope of the "knock and talk" exception. United States v. Taylor, 458 F.3d 1201, 1203-05 (11th Cir. 2006) (holding that officers did not

3

exceed the scope of the "knock and talk" exception when they knocked on the front door, but made a "small departure from the front door" to speak to a person they heard approaching from a barn).  The fundamental basis of the "knock and talk" exception is that officers may enter onto a person's property to try to find someone to whom they can ask questions.  See Jardines, 133 S. Ct. at 1415-16. The implied license underlying the "knock and talk" exception is based on "the habits of the country." Id. at 1415 (quotation omitted).

The plain view doctrine permits the warrantless seizure of an object when an officer is lawfully located in a place from which the object can be plainly viewed, the officer has a lawful right to access the object, and the object's incriminating character is immediately apparent.  United States v. Smith, 459 F.3d 1276, 1290 (11th Cir. 2006).  The plain view doctrine applies "[w]here the initial intrusion that brings the police within plain view of such [evidence] is supported . . . by one of the recognized exceptions to the warrant requirement."  Arizona v. Hicks, 480 U.S. 321, 326 (1987) (quotation omitted).  To justify a search or seizure under the plain view doctrine, it is not enough that the incriminating "item be in plain view; its incriminating character must also be 'immediately apparent.'"  Horton v. California, 496 U.S. 128, 136 (1990) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 466 (1971)).  For an item's incriminating character to be immediately apparent, police must have probable cause to believe the object in plain view is

4

contraband or evidence of a crime.  Minnesota v. Dickerson, 508 U.S. 366, 375 (1993); Smith, 459 F.3d at 1290-91.

Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be discovered in a particular place.  United States v. Tobin, 923 F.2d 1506, 1510 (11th Cir. 1991) (en banc).  "The principal components of a determination of . . . probable cause [are] the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to . . . probable cause."  Ornelas v. United States, 517 U.S. 690, 696 (1996).

Accordingly, whether probable cause exists is an objective inquiry, and "[a] police officer's subjective reasons for a search do not control the legal justification for his actions, as long as objective circumstances justify the search."  United States v. Lanzon, 639 F.3d 1293, 1300 (11th Cir. 2011).  However, "a police officer may draw inferences based on his own experience in deciding whether probable cause exists," and "[a]n appeals court should give due weight to a trial court's finding that the officer was credible and the inference was reasonable."  Ornelas, 517 U.S. at 700.  Furthermore, to have probable cause that an item is contraband or evidence of a crime, an officer need not "know with absolute

5

certainty that all elements of a putative crime have been completed." Smith, 459 F.3d at 1292 (quotations omitted).

Here, the record reveals that Deputy May was lawfully within the curtilage of King's house under the hot pursuit exception to the warrant requirement. Specifically, Deputy May testified that while he was looking for the stolen car of a victim who had been carjacked, individuals in a Dodge Charger appeared to be counter-surveilling May's police cruiser. After circling the police multiple times, the Dodge Charger eluded Deputy May by going 85-90 miles per hour in a residential area. Because of the high speed and danger to the public, Deputy May backed off and did not conduct the traffic stop he had intended to do. For about ten minutes, Deputy May continued to patrol the area and look for the Charger, until he saw it parked in the driveway of a home and pulled into the driveway. Because Deputy May was in immediate and continuous pursuit of the Dodge Charger from the attempted traffic stop, Deputy May was lawfully within the curtilage of King's house when he pulled into the driveway.

Deputy May was also lawfully on the curtilage of King's house under the "knock and talk" exception. He testified that he pulled into the driveway intending to speak with the residents of the house in order to investigate and identify who was driving the vehicle in the driveway. The only reason Deputy May did not reach the front door was because there were individuals outside to address first. As

6

the district court pointed out, there was no fence or no trespassing sign at the beginning of the driveway.  Rather, the no trespassing sign was towards the back of the house tied to the structure of the house itself.  Deputy May did not even see any trespassing sign.  Because Deputy May acted as a typical citizen in the United States would have acted who wanted to get information from a resident, he was lawfully within the curtilage under a "knock and talk" exception.

Moreover, the victim's stolen car -- a Chrysler 300M -- was in plain view from Deputy May's vantage point on the driveway behind the Charger.  As Deputy May explained, the incriminating nature of the Chrysler 300M was immediately apparent based on the events which occurred leading up to the search, including the description of the Chrysler 300M, GPS tracking information indicating that the Chrysler 300M was in the area, the characterization of the carjackers as young black males, and the appearance that May's accomplice, Washington, was removing the tires and rims from the Chrysler 300M.  In short, because Deputy May was lawfully within the curtilage and could discern the incriminating nature of the Chrysler 300M from his vantage point, his actions fall into an exception to the warrant requirement and do not violate the Fourth Amendment.

We are also unconvinced by King's claim that his sentence was substantively unreasonable.  In reviewing the "'substantive reasonableness of [a] sentence imposed under an abuse-of-discretion standard,'" we consider the

7

"'totality of the circumstances.'" Pugh, 515 F.3d at 1190 (quoting Gall v. United States, 552 U.S. 38, 51 (2007)).  The district court must impose a sentence "sufficient, but not greater than necessary to comply with the purposes" listed in 18 U.S.C. § 3553(a).[1]  "[W]e will not second guess the weight (or lack thereof) that the [court] accorded to a given [§ 3553(a)] factor ... as long as the sentence ultimately imposed is reasonable in light of all the circumstances presented." United States v. Snipes, 611 F.3d 855, 872 (11th Cir. 2010) (quotation, alteration and emphasis omitted). We will vacate a sentence only if we "are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Irey, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (quotations omitted).

Although § 3553(a)(6) requires the court to avoid unwarranted sentencing disparities, concerns about disparate sentences among co-conspirators are not implicated where the appellant and a codefendant are not similarly situated. See United States v. Williams, 526 F.3d 1312, 1323-24 (11th Cir. 2008).    A

---

[1]    The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

8

"[d]isparity between the sentences imposed on codefendants is generally not an appropriate basis for relief on appeal." United States v. Regueiro, 240 F.3d 1321, 1325-26 (11th Cir. 2001). The district court is not required to explicitly state that it considered the § 3553(a) factors, as long as the court's comments demonstrate that it considered the factors when imposing sentence. United States v. Dorman, 488 F.3d 936, 944 (11th Cir. 2007). The party challenging the sentence bears the burden to show it is unreasonable. United States v. Tome, 611 F.3d 1371, 1378 (11th Cir. 2010).

King has not shown that his sentence was substantively unreasonable. As the record reveals, King received a total 300-month sentence (120 months for Count 1 and 180 months for Count 2, to be run consecutively), while his accomplice Washington received a total of 157 months' imprisonment. In King's case, however, the district court expressed concern that King had attempted to directly shoot a victim during the carjacking of a second car, a Chevrolet Impala:

> "I think [the sentence is] appropriate when I consider the nature and circumstances of this particular case, what the defendant did, not just discharging a firearm like shooting at the vehicle or around the vehicle or up in the air but shooting actually the victim in the leg. It is a huge wonder we're not dealing with some type of capital murder case here. If the bullet had just struck the major artery in the leg, we would have somebody who would be dead and it would be a totally different circumstance."

The district court acknowledged that the advisory guideline range for Count 1 was 57 to 71 months' imprisonment, but concluded that "I don't believe the guideline

range is appropriate." This record plainly indicates that the court considered the § 3553 factors in imposing King's sentence.

Furthermore, King and Washington engaged in different conduct. As we've detailed, King shot at a driver while attempting to steal the Chevrolet Impala. The shot ricocheted off of a battery in the victim's pocket. It is true that Washington similarly approached the victim of the Chrysler 300 with a handgun. However, Washington shot into the ground, not into the victim like King did. Thus, King and Washington were not similarly situated, and the concern about disparate sentences was not implicated.

Because King has now shown his sentence was substantively unreasonable, the district court did not abuse its discretion by varying upward and increasing King's sentence. Accordingly, we affirm King's convictions and sentences.

**AFFIRMED**.